UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHRISTIE ANDREWS, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. _____ |
| TRI STAR SPORTS AND ENTERTAINMENT GROUP, INC. | ) JURY DEMAND |
| Defendant. | ) |

## PLAINTIFF'S COMPLAINT

COMES now the Plaintiff, by and through counsel, **CHRISTIE ANDREWS** individually and submits this Complaint against Defendant **TRI STAR SPORTS AND ENTERTAINMENT GROUP, INC.**, seeking relief for discrimination pursuant to Title I and V of the American with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 et seq., as amended by the ADA Amendments Act of 2008 (ADAAA) to correct unlawful employment practices on the basis of disability and failure to provide reasonable accommodations, and to provide appropriate relief to Plaintiff who was adversely affected by such practices.

## PARTIES

1. Plaintiff, Christie Andrews (hereinafter referred to as Plaintiff), is a citizen of the United States who resides in Florida. Plaintiff is and was at all times relevant to this Complaint a citizen of the State of Tennessee and a resident of Davidson County when a substantial part of the events or omissions giving rise to the present claim occurred within this judicial district.

2. Defendant Tri Star Sports and Entertainment Group, Inc. (hereinafter referred to as Defendant), is upon information and belief, a corporation organized under the laws of the State of Tennessee, with its principal place of business at 11 Music Circle S, Nashville, Tennessee 37203 and may be served through registered agent Louise M. Taylor at 11 Music Circle S, Nashville, Tennessee 37203 and or its attorney Tara Swafford, Esq., The Swafford Law Firm, 207 Third Avenue North, Franklin, Tennessee, 37064 as requested.

## JURISDICTION AND VENUE

3. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the present claim occurred within this judicial district. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(l) and (3) of Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. § 2000e-5(f)(l) and (3), Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and is further authorized by Title V of the ADA, 42 U.S.C. § 12203(c), which incorporates by reference the enforcement remedies and procedures available under Section 107(a) of the ADA, 42 U.S.C. § 12117(a).

4. On or about April 9, 2020, Plaintiff completed the online inquiry form with the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination.

5. On or about October 2, 2020, Plaintiff filed a charge of discrimination (No. 494-2020-01614) against Defendant with the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination.

6. On or about May 11, 2021, Plaintiff received a notice of suit rights from the EEOC, advising her that she had 90 days to file against Defendant under the ADA. See attached exhibit Notice of Right to Sue letter.

7. Plaintiff has filed this Complaint within the aforementioned 90 day right to sue period and all conditions precedent to the institution of this lawsuit have been fulfilled.

8. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), which incorporates Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h). Furthermore, Defendant has continuously operated their business in Tennessee and this jurisdiction with at least fifteen (15) employees at various locations for each working day in each of twenty (20) or more calendar weeks in the preceding calendar year.

9. At all relevant times, Defendant has been covered entities under Section 101(2) of the ADA, 42 U.S.C. §12111(2).

10. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of Section 101(8) of the ADA, 42 U.S.C. §12111(8).

11. The unlawful discrimination alleged below were committed within the jurisdiction of the United States District Court for the Middle District of Tennessee, Nashville Division.

12. Plaintiff asserts she was discriminated against on the basis of her disability. As such, Plaintiff falls within the protected class as a "person" and/or employee as defined in 42 U.S.C. § 2000e(a) who applied for and accepted employment with Defendant. Furthermore, Plaintiff asserts that she was discriminated against and subjected to disparate treatment "because of her disability" and/or "on the basis of disability."

3

Case 3:21-cv-00526   Document 1   Filed 07/09/21   Page 3 of 12 PageID #: 3

13. Defendant treated other employees who were not disabled better than Plaintiff or provided accommodations to other disabled employees that were not offered to Plaintiff. Defendant failed to engage in their legal obligation to engage in an interactive process with Plaintiff as an employee. Defendant had actual knowledge about Plaintiff's disability and failed to assist the employee in seeking accommodations. Plaintiff could have been reasonably accommodated but for the Defendant's lack of good faith. In addition to and/or in the alternative, Defendant terminated Plaintiff of the basis of her disability.

14. Plaintiff was otherwise qualified to perform the essential functions of her job with reasonable accommodations by the employer such as being able to work from home which had initially been considered and/or offered as an accommodation.

15. Defendant had actual knowledge of Plaintiff's disability and the physical limitations and/or restrictions arising out and/or resulting from the disability. The limitations arose from Plaintiff's coughing caused by Defendant's spraying of aerosol products to attempt to remediate covid19 exposure.

16. Defendant failed to modify its workplace and/or leave policies as a form of providing a reasonable accommodation. Such accommodations were necessitated by Plaintiff's individual disability related limitations. There was no undue hardship to the Defendant. This further constitutes disparate treatment in addition thereto.

17. Defendant initially upon its own initiative considered and proposed that Plaintiff perform her duties from her residence through a company provided computer.

18. Defendant had an affirmative obligation under the ADA and precedent to initiate the interactive process with Plaintiff upon actual knowledge of her disability to identify the precise limitations resulting from the disability and potential reasonable accommodations that could

overcome those limitations. In addition to and/or in the alternative, on or about March 17, 2020, this affirmative obligation existed upon actual knowledge of Plaintiff's request to employer through a physician's letter requesting a work from home accommodation and its own internal email communications suggesting that Plaintiff should work from home. Defendant had an affirmative obligation to provide Plaintiff the opportunity to work from home as a reasonable accommodation as it had provided to other employees.

19. Plaintiff was terminated upon a pretext of layoffs and/or tardiness and performance issues when in fact it was based on her disability, request for accommodation, and/or failure to engage in an interactive process with Plaintiff. This constitutes an adverse employment action.

20. Plaintiff was terminated on or about March 20, 2020 which was three days after submitting her physician's letter request for accommodation to perform her duties from her residence dated March 17, 2020.

## STATEMENT OF FACTS

21. The discriminatory conduct alleged herein occurred in connection with Plaintiff's employment with Defendant as a "team coordinator."

22. The title of "client services specialist" referenced on the separation notice filed with the State of Tennessee is an incorrect title and was changed to "team coordinator" during Plaintiff's tenure of employment.

23. On or about March 16, 2020, Defendant began spraying aerosol products to attempt to remediate covid19 risk of exposure.

24. Plaintiff's disability is asthma and/or pulmonary issues involving obstruction of her airway.

25. Plaintiff began presenting symptoms of adverse effects caused by this spraying of aerosol which manifested symptoms of her asthma such as coughing and bronchitis symptoms.

26. Defendant through Bryan Luecke was on actual notice of this coughing as demonstrated in an email he circulated on March 17, 2020.

27. Defendant through Bryan Luecke on its own initiative determined that Plaintiff should perform her duties from her residence as stated in an email he circulated on March 17, 2020.

28. Bryan Luecke stated "I would recommend that you offer up a work from home situation but in the absence of this I think she should stay away from the office….." in an email he circulated on March 17, 2020.

29. Defendant through Bryan Luecke stated that Plaintiff in fact "ha[s] the ability to work from home since she has a laptop primarily for AMEX support after hours" in an email he circulated on March 17, 2020.

30. The laptop referenced in paragraph 30 was set up to work on a "virtual private network" already on March 17, 2020 and before this date as well.

31. On March 17, 2020, subsequent to circulation of the above referenced email, Yolanda Simpson called Plaintiff and requested a letter from Plaintiff's physician confirming the asthma and medical necessity to work from her residence as an accommodation.

32. On March 17, 2020, Plaintiff provided a letter from Autumn Nelson who is a nurse practitioner with Tri Star Medical Group which stated that Plaintiff was a patient for several years with "known asthma" and "would benefit from working at home due to the rising risk of COVID-19."

33. Between March 18 and 19, 2020, Plaintiff contacted Yolanda Simpson and requested access to the laptop referenced above to begin working from home.

34. Yolanda Simpson responded that she was awaiting approval from management.

35. On or about March 20, 2020, a full staff meeting was called and nearly every employee in the office attended. Each employee was instructed that if they had submitted a request to work from home that they could retract the request.

36. The employees in this meeting referenced in paragraph 36 were instructed that if they were too sick or afraid to return to the office that their employment would be terminated.

37. On or about March 20, 2020, Yolanda Simpson called Plaintiff and informed her that she was being terminated "for lack of work." This phone call was immediately and/or shortly after the meeting.

38. On or about March 20, 2020, Yolanda Simpson drafted a separation notice required by the State of Tennessee which marked the boxes "lack of work" and "quit."

39. Plaintiff complained that in fact she did not resign and the above referenced separation notice was amended to remove the box checked for "quit."

40. Defendant has attested to lack of work as the basis for separation of employment. This is a false pretext for Plaintiff's termination.

41. Defendant has attested that Plaintiff's separation of employment was also caused by issues of "tardiness," "attendance," and "punctuality." Defendant only counseled Plaintiff once or twice about such issues which related to medical issues.

42. Defendant has attested to laying off a number of employees supporting its pretext of "laying off" Plaintiff.

43. Upon information and belief, Defendant did not lay off any employees in the business management department in Nashville, Tennessee.

44. Plaintiff was the most experienced team coordinator in the Nashville and Los Angeles office.

45. Defendant did not lay off any employees who were team coordinators in the Nashville office.

46. Defendant stated during early March 2020 that the services the company provided was deemed essential.

47. Defendant posted a job available with title of "team coordinator" on indeed.com.

48. Defendant posted a job available with title of "team coordinator" on indeed.com some time between March 20, 2020 and May 30, 2020.

49. Other employees were permitted by Defendant to work from home during this time and/or after termination of Plaintiff's employment.

## COUNT I

## DISCRIMINATION IN VIOLATION OF THE ADA AND FAILURE TO PROVIDE A REASONABLE ACCOMODATION IN VIOLTION OF THE ADA

50. Since at least March 16, 2020 Defendant has engaged in unlawful employment practices at its Nashville location in violation Title I of the ADA, 42 U.S.C. §12111(a) and (b).

    a. Discriminating and/or terminating Plaintiff on the basis of and/or arising out of her actual and/or perceived disability.

    b. Failing to initiate and engage in the interactive process to identify the precise limitations resulting from Plaintiff's disability and potential reasonable accommodations

8

Case 3:21-cv-00526   Document 1   Filed 07/09/21   Page 8 of 12 PageID #: 8

that could overcome those limitations. Limitations constituting coughing and pulmonary issues during spraying of aerosol in the office by Defendant to remediate Covid19 exposure.

       c.      Failing to provide reasonable accommodations to Plaintiff.

       d.      Discharging Plaintiff, due to the need to accommodate Plaintiff's disability.

51. Plaintiff is a qualified individual with a disability and meets the requirements and can perform the essential functions of the team coordinator position with or without reasonable accommodation.

52. Defendant discriminated against Plaintiff by automatically terminating her pursuant to an apparent policy or immediate directive with a disparate impact on individuals with an actual or perceived disability.

53. Plaintiff asserts that she was discriminated against and subjected to disparate treatment "because of her disability" and/or "on the basis of disability."

54. Defendant treated other employees who were not disabled better than Plaintiff.

55. Plaintiff could have been reasonably accommodated but for the Defendant's lack of good faith.

56. Defendant terminated Plaintiff on the basis of her disability.

57. Plaintiff was otherwise qualified to perform the essential functions of her job with reasonable accommodation by the Defendant such as being able to work from home which has been suggested as an accommodation by Defendant on its own as referenced above.

58. Defendant had actual knowledge of Plaintiff's disability being asthma and pulmonary issues and the physical limitations and/or restrictions arising out/or of or resulting from the disability.

9

Case 3:21-cv-00526   Document 1   Filed 07/09/21   Page 9 of 12 PageID #: 9

59. Defendant failed to search for and/or consider a vacant, equivalent position, and/or a lower-level position to which the Plaintiff could be reassigned and was qualified for as a form of reasonable accommodation.

60. Plaintiff was terminated on a false pretext of layoff and/or tardiness and punctuality issues. This constitutes an adverse employment action and/or in the alternative an unlawful employment practice under the ADA.

61. The basis for termination proffered by Defendant are false and serve as a pretext for termination therefore deserving no credence as a legitimate non-discriminatory act.

62. The effect of the unlawful employment practices complained of herein has been to deprive the Plaintiff of equal employment opportunities and to otherwise adversely affect her status as an employee because of her disability. Such discrimination and/or retaliation practices were performed intentionally with malice and/or reckless indifference to the federally protected rights of Plaintiff.

63. As a direct and proximate result of Defendant's actions as set forth above, Plaintiff has suffered:

    a. Loss of back wages;

    b. Loss of insurance benefits;

    c. Loss of other fringe benefits;

    d. Loss of Future earnings and front-pay;

    e. Loss of reputation;

    f. Humiliation, embarrassment, and loss of self-esteem;

    g. Punitive damages; and

h. Loss of time and money in endeavoring to protect him from Defendants' unlawful discrimination, including costs and reasonable attorneys' fee of this action.

64. Plaintiff has suffered damages as a result of Defendant's discriminatory actions in excess of $300,000.00.

**WHEREFORE, Plaintiff prays for the following relief against Defendant:**

1. Declaration that the Defendants violated Plaintiff's rights with regard to disability discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., and/or ADA as referenced herein.

2. Reinstatement;

3. Compensatory damages with prejudgment and post judgment interest to Plaintiff for all salary, back pay, front pay, and benefits lost due to Defendants' unlawful actions in an amount not less than $300,000.00 or to be determined;

4. Punitive damages to Plaintiff in an amount to be determined;

5. Award to Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, costs, and expenses;

6. Such other and further relief as the Court deems just and proper; and

7. Jury trial with Cause to be tried by a jury of peers (12)

Respectfully submitted,

/s/Roland Mumford

Roland Mumford BPR 026495
Law Offices of Roland Mumford & Assoc.
242 West Main Street, No. 223
Hendersonville, TN 37075
Phone: 615.348.0070
Fax: 614.246.4110
Email: roland@mumfordlaw.net

Attorney for Plaintiff