IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHRISTIE ANDREWS,<br><br>    Plaintiff,<br><br>v.<br><br>TRI STAR SPORTS AND<br>ENTERTAINMENT GROUP, INC.<br><br>    Defendant. | Civil No. 3:21-cv-00526<br>Judge Eli J. Richardson<br>Magistrate Judge Jefferey S. Frensley |

## Plaintiff's Motion for a Protective Order

Defendant served requests for production that asked Plaintiff to sign blank releases authorizing Defendant to obtain any and all records from all Plaintiff's employers (past and present) and any and all Plaintiff's medical records from 2015 through the present. Plaintiff moves this Court to enter a protective order pursuant to Fed. R. Civ. P. 26(c)(1)(C) and prescribe a discovery method other than the releases selected by Defendant is less intrusive.

## Background

In March of 2020 Plaintiff's asthma was triggered in response to cleaning agents used by Defendant in response to COVID-19. Complainant's asthma manifested itself as a cough, leading Plaintiff's immediate supervisor to send her home. Plaintiff requested a reasonable accommodation to work from home and supplied a supporting letter from her healthcare provider to her Defendant. The day after Plaintiff submitted her request and doctor's letter Defendant terminated Plaintiff's employment. Defendant's claims Plaintiff's employment was terminated as part of a reduction in force.

## Discovery Dispute

Defendant's proposed "authorization by patient for release of medical information,"[1] "authorization for use or disclosure of medical information"[2] and "authorization and release for employment records"[3] are fatally overbroad on their face and are not reasonably tailored in temporal or topical scope. Ward v. Liberty Ins. Corp., No. CIV-15-1390-D, 2018 U.S. Dist. LEXIS 26710, at *7 (W.D. Okla. Feb. 20, 2018) (Requests production of documents in twenty-four categories and uses blanket terms such as "all documents," "all marketing materials," "all documents regarding", "all documents indicating," "all documents indicating or referencing," "pertaining to," and " without any reference to scope or time is facially overly broad when it uses such omnibus phrases since it requires the responding party to engage in "mental gymnastics" to determine what information may or may not be remotely responsive). While they may seek some relevant information they requests are so broad as to include information with no apparent relevancy, meaning the burden is on the party seeking discovery to show the relevancy of the discovery request." Dean v. Anderson, No. 01-2599-JAR, 2002 U.S. Dist. LEXIS 11536, 2002 WL 1377729, at *2 (D. Kan. June 6, 2002)

---

[1] Defendant's release includes the prefatory of "any and all" and catch-all language "or other documents, records, or information" these phrases suggest no limitation, would dissuade any recipient from thinking there is any type of limitation of information that may be produced. Defendant list categories of documents including asking for "x-rays" **and "venereal disease test results**." [**Exhibit** 1].

[2] This authorization includes overly broad phrases such as "but is not limited to, providing copies of or access to all medical records of any type, including any documents or correspondence from other health care providers." [**Exhibit 2**].

[3] This authorization includes "any and all material or information pertaining to the employment or prospective [employment]" and concludes "and any other records concerning employment." It similarly requests all workers' compensation files, all hospital, physician, clinic, nurse, psychiatric and dental records, x-rays, test results, disability claims, or work-related accidents, including correspondence, accident reports, injury reports and incident reports, insurance claim forms, questionnaires and records of payments made, pension records, disability benefit records, all records regarding participation in company sponsored health, dental, life and disability insurance plans," without any temporal limitation. [**Exhibit 3**].

Plaintiff has produced medical and employment records in this case based on the proportional needs of the case. Plaintiff had engaged in a good faith effort to compromise the discovery disputes without involving the Court. Plaintiff was continuing to work with Defendants to narrow discovery disputes when they unilaterally contacted the Court to request a discovery conference. Defendant insists on conducting unfettered discovery into Plaintiff's employment and medical history through the use of the blank blanket releases.

Interrogatories and depositions are less intrusive means of obtaining information on the same point. Defendant has not identified any reason to obtain the duplicative and cumulative discovery it seeks.

## The Law

The scope of discovery in all civil litigation in the federal courts is set by Federal Rule of Civil Procedure 26(b). That rule generally confines discovery to any nonprivileged matter that is relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Proportionality is a matter of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

In particular, discovery is more liberal than the trial setting, as Rule 26(b) allows any "line of interrogation [that] is reasonably calculated to lead to the discovery of admissible evidence." Id. (quoting Mellon v. Cooper-Jarrett, Inc., 424 F.2d 499, 501 (6th Cir. 1970)). In other terms, the Court construes discovery under Rule 26 "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed.

2d 253 (1978). In considering the scope of discovery, the Court may balance Defendant's "right to discovery with the need to prevent 'fishing expeditions.'" Conti v. Am. Axle and Mfg., Inc., 326 F. App'x 900, 907 (6th Cir. 2009) (quoting Bush, 161 F.3d at 367). Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and produce a variety of information that does not reasonably bear upon the issues in the case. Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992).

The court should strike a balance between permitting the party to seek relevant information while at the same time avoiding an unnecessary incursion into areas that are far removed from the events of this case, and which may be not only of marginal relevance but also of a personal and sensitive nature. See Ehrlich v. Union Pac. R. Co., No. 13 2142 JTM TJJ, 302 F.R.D. 620, 2014 U.S. Dist. LEXIS 143775, 2014 WL 5089407, at *7 (D. Kan. Oct. 9, 2014) (imposing 5 year temporal limit of discovery of defendant's medical records in train accident case); Henne v. Great River Reg'l Library, No. 19-cv-2758 (WMW/LIB), 2021 U.S. Dist. LEXIS 252954, at *32 (D. Minn. Jan. 4, 2021)(Court held the relevancy of any medical records diminishes as it becomes more distant in temporal proximity to Plaintiff's factual allegations and limited the temporal scope of medical records to 2 years before termination).

Rule 26(c) allows the court to issue protective orders for good cause shown to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including that the disclosure or discovery not be had or that the disclosure or discovery be limited to certain matters.

## **Argument**

Fed. R. Civ. P. 34 does not explicitly provide that a party can serve a request for production with a release for medical records or employments. Similarly, Fed. R. Civ. 37 should

4
Case 3:21-cv-00526   Document 29   Filed 04/06/22   Page 4 of 10 PageID #: 195

not be used to compel Plaintiff to sign a blank blanket releases when she has and is willing to produce information.

## Plaintiff's Medical Records

On March 1, 2022, Plaintiff's counsel produced all 234 pages of medical records obtained from her health provider, including:

(1) the release requested all personal health information;

(2) the invoice lists the number of pages produced by provider to Plaintiff's; and

(3) certification of medical records from "Family Practice Associates at the Crossings" [of Tristar Medical Group].

[**Exhibit 1**]. Every page received from Plaintiff's medical provider was produced, nothing was withheld.

Plaintiff never objected to producing all medical records. Defendant asked Plaintiff to sign a blank blanket release for medical records going back 5 years prior to Plaintiff's request for reasonable accommodation through the present [a total of 7 years]. Because there is no bright line as to what time period medical records must be disclosed it is no surprise parties disagreed. As a compromise and effort avoid the Court's intervention Plaintiff offered 2 years prior to her request for reasonable accommodation through the present [a total of 4 years]. Based on the phone conference the Court is suggesting 4 years prior to Plaintiff's request for reasonable accommodation. Accordingly, Plaintiff will begin the process for obtaining records consistent with the Court's suggestion.

The is no need to compel Plaintiff to sign Defendant's blank blanket release. Plaintiff simply requests the records be produced to her first, so that she has an opportunity to review her personal health records before Defendant is granted access. In the unlikely event there is an issue

she will move for a tailored protective order. Plaintiff will produce the invoice and the custodians statement.

### Plaintiff's Employment Records

On February 10, 2022, Plaintiff produced **41 pages** related to Plaintiff's post-termination employment and earnings including [W-2s and weekly paystubs between July 30, 2021- February 4, 2022]. Plaintiff indicated she was willing to produce information, but Defendant insisted on moving forward with the conference. Plaintiff supplemented her response by identifying 81 job vacancies she applied to between April 15, 2020, through February 18, 2022. Plaintiff is also producing documents her mitigation efforts, including copies of her resumes, the job postings, and her current job description.

The case law as to what employment records are discoverable is much more clearly defined. Plaintiff identified potential employers, vacancies she applied for, identified all her subsequent employment, produced 1099, W-2s, paystubs and is in the process of producing resumes and other records evidencing Plaintiff's efforts to mitigate.[4]

Plaintiff's performance history with employers [other than Defendant] is not relevant to issues involved in current case and is inadmissible under Fed. R. Civ. 402 and 404.

Plaintiff is still employed with her employer. Therefore, her performance records, if any, are not relevant to Plaintiff's duty to mitigate. As one district court noted, an employee "has a legitimate concern that a subpoena sent to her current employer under the guise of a discovery

---

[4] "When an employee has been wrongfully terminated, the measure of damages is the amount the employee would have earned had the employer not dismissed him, less what would have been earned, or might have been earned, in some other employment, by the exercise of reasonable diligence." Frye v. Memphis State Univ., 806 S.W.2d 170, 173 (Tenn. 1991). The employee "is only required to exercise reasonable diligence in seeking other employment of a similar or comparable nature." Id.; see also Ford v. Nicks, 866 F.2d 865, 873 (6th Cir. 1989) ("An employee is not required to go to heroic lengths in attempting to mitigate his damages, but only to take reasonable steps to do so.")

request could be a tool for harassment and result in difficulties for her in her new job." Graham v. Casey's Gen. Stores, 206 F.R.D. 251, 256 (S.D. Ind. 2002); see also Richards v. Convergys Corp., Nos. 2:05-CV00790-DAK, 2:05-CV-00812 DAK, 2007 U.S. Dist. LEXIS 9131, 2007 WL 474012, at *3 (D. Utah Feb. 7, 2007) ("[A] subpoena to a current employer may cause problems in the employment relationship. Even assuming that [plaintiff's] current employer already is aware of the ongoing lawsuit, the subpoenas tend to focus the employer's attention on the litigation."). Because Plaintiff has produced information and expressed a willingness to narrow resolve disputes, Defendant's rush to the Court to get a stamp approval for its blank blanket releases is strong indica Defendant is using discovery as "more of a 'fishing expedition,' or 'tool for harassment,' than a reasonably calculated discovery request" in light of the irrelevant information it sought. 2010 U.S. Dist. LEXIS 143543, [WL] at *3.

While Plaintiff agrees that a her subsequent salary is relevant to the issue of mitigation of damages, Defendant has not made any relevancy showing as to plaintiffs' prior salary. Maxwell v. Health Center of Lake City, Inc., 2006 U.S. Dist. LEXIS 36774, 2006 WL 1627020 (M. D. Fla., June 6, 2006) (granting the plaintiff's motion to quash after finding that Defendant failed to show why salary information from a previous employer is in any way relevant to damages under a discrimination claim); Graham v. Casey's General Stores, 206 F.R.D. 251, 255 (S.D. IN.2002)(same).

Sifting the personnel records of complainants' prior employers for medical information which, if present, might relate to some claims of the complainants in this case offers poor justification for the discoverability of the employees' prior employment records. Interrogatories and depositions are a far more reasonable way to obtain this information EEOC v. Jack Marshall Foods, No. 09-00160-WS-N, 2009 U.S. Dist. LEXIS 147119, at *10 (S.D. Ala. Aug. 4, 2009).

7

Clearly much of the discovery sought is unreasonably cumulative or duplicative, and can be obtained from Plaintiff. Defendant's refusal to wait on less intrusive means is likely motivated by some other objective. Here Defendant has levied the after-acquired evidence affirmative defense and has provided zero factual support for levying such a claim. It is recognized that

> [t]he concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist claims under the Act is not an insubstantial one,

McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 362-63, 115 S. Ct. 879, 886-87 (1995).

Plaintiff moves for a protective order so that discovery proceed through traditional means. There is no reason to compel Plaintiff to sign Defendant's blank blanket release, for it to be served on Plaintiff's current employer and 80+ potential future employers. Plaintiff is producing documents related to her mitigation efforts. There is no reason to allow Defendant seek duplicative discovery.

Plaintiff is moving for a protective order to avoid embarrassment, annoyance, and oppression with her current employer and potential prospective employers.

## Conclusion

Parties had a reasonable dispute as to the temporal scope of what medical records are discoverable. Plaintiff is agreeing to supplement with additional records. She has a recognized privacy interest in both her medical and employment records.[5] Plaintiff is not seeking to avoid

---

[5] An employee, however, "has a privacy right in his personnel records sufficient to confer standing to challenge a third-party subpoena seeking those records[.]" Public Serv. Co. of Okla. v. A Plus, Inc., No. CIV-10-651-D, 2011 U.S. Dist. LEXIS 16087, 2011 WL 691204, at *4 (W.D. Okla. Feb. 16, 2011) (citations omitted). Joyner v. Town of Elberta, Civil Action No. 13-00067-CG-N, 2014 U.S. Dist. LEXIS 201645, at *5 n.4 (S.D. Ala. Jan. 8, 2014)

production, only keep it within the scope of the Fed. Rules of Civil Procedure, and minimizing the risk of causing annoyance, embarrassment, or oppression.

Should there be any remaining disputes then Defendant should be required to employ subpoenas under Fed. R. Civ. P. 45 instead of blank blanket releases Defendant. This avoids the risk of confusion, abuse, and protects the interests of the party seeking discovery, the recipient of the subpoena, and Plaintiff's privacy interests.

                                        Respectfully submitted,

                                        Daniel Arciniegas
                                        **ARCINIEGAS LAW**

## CERTIFICATE OF SERVICE

I hereby certify that on Thursday, Wednesday, April 6, 2022, I electronically served the foregoing ***PLAINTIFF'S MOTION FOR PROTECTIVE ORDER*** via CM/ECF:

Tara L. Swafford, BPR # 17577
Thomas Anthony Swafford, BPR # 17578Elizabeth G. Hart, BPR # 030070
The Swafford Law Firm, PLLC
207 Third Avenue North
Franklin, Tennessee 37064
Tel: (615) 599-8406
Fax: (615) 807-2355
Tara@swaffordlawfirm.com
Tony@swaffordlawfirm.com
Betsy@swaffordlawfirm.com

Attorneys for Tri Star Sports and EntertainmentGroup, Inc.

        Respectfully submitted,

        *[signature]*

---

Daniel Arciniegas, BPR #35853
**ARCINIEGAS LAW**
1242 Old Hillsboro Road
The Atrium Building
Franklin, Tennessee 37069
T. 629.777.5339

Daniel@AttorneyDaniel.com

ROLAND F. MUMFORD, BPR #26495
Law Offices of Roland Mumford &
Assoc.242 West Main Street No. 223
Hendersonville, TN 37075
Telephone: 615.348.0070
roland@mumfordlaw.net

*Attorney for Plaintiff
Christie Andrews*

Case 3:21-cv-00526   Document 29   Filed 04/06/22   Page 10 of 10 PageID #: 201