# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| CHRISTIE ANDREWS, ) | |
| ) | |
| Plaintiff, ) | CASE NO. 3:21-cv-00526 |
| ) | |
| v. ) | Judge Eli J. Richardson |
| ) | Magistrate Judge Jefferey S. Frensley |
| TRI STAR SPORTS AND ) | |
| ENTERTAINMENT GROUP, INC., ) | |
| ) | JURY DEMAND |
| Defendant. ) | |

## TRI STAR SPORTS AND ENTERTAINMENT GROUP, INC.'S
## RESPONSE IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

Defendant Tri Star Sports and Entertainment Group, Inc. ("Tri Star" or "Defendant"), by and through counsel, responds in opposition to the Motion for Protective Order filed by Plaintiff Christie Andrews ("Plaintiff" or "Andrews") as to providing signed medical and employment releases. (Doc. 29). Plaintiff has articulated no burden caused by the requested releases and has not demonstrated good cause that would justify excusing her from executing standard authorizations releasing her medical and employment records. Thus, Plaintiff's motion should be denied.

**I.     Relevant Factual Background**

Plaintiff was employed by Tri Star from February 2014 until March 2020, when she was laid off because of the COVID-19 pandemic. Plaintiff then filed this lawsuit, alleging that Tri Star discriminated against her and failed to accommodate her because of a disability, in violation of the Americans with Disabilities Act (the "ADA"). Plaintiff alleges that she has a disability, as defined by the ADA, and that she was qualified to perform the essential functions of her job at Tri Star

1

"with reasonable accommodations". (Complaint, ¶¶ 10, 14, 24.) She contends that her disability – asthma – existed as early as 2014. Plaintiff also alleges that her disability subjected her to "physical limitations and/or restrictions" which were caused by aerosol products used by Tri Star to limit potential COVID-19 exposure. (Complaint, ¶¶ 15, 16.) Plaintiff contends that she was discriminated against because of her "actual and/or perceived disability," and that Tri Star had record of a disability. (*See* Complaint, ¶¶ 26, 32, 50a.) In addition, Plaintiff contends that her admitted attendance problems at Tri Star were "related to medical issues". (Complaint, ¶ 41.) Plaintiff seeks damages for emotional distress, putting her mental health at issue. (Complaint, ¶ 63.) In November 2020, Tri Star requested that Plaintiff execute two releases for medical records (one general, one for psychotherapy records) and a release for employment records. Plaintiff seeks a protective order so that she is not required to sign these releases.

## II. Law and Argument

### A. Protective Orders

Federal Rule of Civil Procedure 26(b) allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In this Circuit, relevance for discovery purposes is extremely broad and the discovery sought need only be reasonably calculated to lead to the discovery of admissible evidence. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998); *Mellon v. Cooper–Jarrett, Inc.*, 424 F.2d 499, 500–01 (6th Cir. 1970). To determine relevance for purposes of discovery:

> the parties and the court [should] focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action.

2

Fed. R. Civ. P. 26 Advisory Committee Notes, 2000 Amendments, Subdivision (b)(1).

For good cause, this Court may limit the scope of discovery where the information sought is overly broad or would be unduly burdensome to produce. *See* Fed. R. Civ. P. 26(b)(2). In determining the proper scope of discovery, the Court should balance a party's "right to discovery with the need to prevent fishing expeditions." *Conti v. Amer. Axle & Mfg. Inc.*, 326 Fed. App'x. 900, 907 (6th Cir. 2009) (citations and quotations omitted). The Court should consider "whether the burden or expense of the proposed discovery outweighs its likely benefit" by taking into account "the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues[.]" Fed. R. Civ. P. 26(b). The party seeking a protective order bears the burden of establishing good cause by "articulat[ing] specific facts showing clearly defined and serious injury resulting from the discovery sought[.]" *Niswander v. Cincinnati Ins. Co.* 2007 WL 9770253, *2 (citing *Nix v. Sword,* 11 Fed. App'x. 498, 500 (6th Cir. 2001) (internal quotations and citations omitted)). The moving party "cannot rely on mere conclusory statements." *Id.*

**B. Plaintiff's Medical Records Are Necessary to the Primary Claims and Defenses.**

In ADA litigation, a Plaintiff places her physical and mental health at issue and makes her medical records "a legitimate source of discovery", without which a Defendant "will be severely prejudiced in defending [the claims]." *Vartinelli v. Caruso*, 2008 WL 2397666, *1 (E.D. Mich. June 10, 2008); *Sutherland v. City of Cincinnati*, 2013 WL 2255885, *6 (S.D. Ohio May 22, 2013); *see also Graham v. Casey's General Stores*, 206 F.R.D. 251, 254 (S.D. Ind. 2002). Medical records beginning from the date of onset of the disability are relevant, and a court has the authority to order a plaintiff to sign authorization forms to facilitate discovery of these records from third

3

Case 3:21-cv-00526   Document 30   Filed 04/13/22   Page 3 of 11 PageID #: 207

parties. *See Sutherland*, 2013 WL 2255885 at *6; *see also Mullins v. Toyota Motor Mfg.*, 28 Fed. App'x. 479, 479 (6th Cir. 2002). In this Circuit, a defendant in a disability discrimination case "has a right to discover the medical records of the plaintiff by obtaining a medical records release." *Quinn v. ConAgra Foods Packaged Foods LLC*, 2010 WL 3603780, *2 (S.D. Ohio Sept. 10, 2010) (citing *Uszak v. Yellow Transp., Inc.,* 343 Fed. App'x. 102, 106 (6th Cir. 2009)).

To succeed on her claims, Plaintiff must prove "(1) she is a disabled person within the meaning of the ADA, (2) she is otherwise qualified, with or without reasonable accommodation, to perform the essential functions of the job, and (3) the employer terminated her because of her disability." *Starks-Umojo v. Federal Express Corp.*, 341 F. Supp. 2d 979, 990 (W.D. Tenn. 2003) (citing *Gantt v. Wilson Sporting Goods Co.,* 143 F.3d 1042, 1047 (6th Cir.1998)). Thus, as a threshold matter, Plaintiff must prove that she is disabled as defined by the ADA by showing that she "1) [has] a physical or mental impairment that substantially limits one or more of the major life activities of an individual; 2) [has] a record of such impairment; or 3) [was] regarded as having such an impairment." *Id.* at 991 (citing 42 U.S.C. § 12102(2)). Under each definition, Plaintiff must do more than "'merely submit evidence of a medical diagnosis of an impairment.'" *Id.* at 991, 993, (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 198 (2002)). Thus, Plaintiff's medical records are necessary to prove or disprove the basic elements of her ADA claims, and Tri Star must have direct access to them in order to properly defend itself.

### C. The Medical Releases Are Tailored to this Litigation.

Plaintiff contends that the releases proposed by Tri Star are overbroad and not reasonably tailored in time or scope and argues that the burden is on Tri Star to show the relevancy of the information sought. However, as the party seeking a protective order, Plaintiff bears the burden

4

of demonstrating good cause by articulating specific facts in support of a protective order. *See Niswander*, 2007 WL 9770253 at *2.

Plaintiff articulates one specific concern – that the medical release includes requests for venereal disease test results. Plaintiff did not bring this concern to Tri Star's attention prior to filing for a protective order. In fact, Tri Star offered to revise the releases if Plaintiff had specific suggestions or concerns, and Plaintiff articulated none. Tri Star will agree to modify the medical releases to remove this language.[1]

Plaintiff additionally argues that the use of a blank release is overly broad and will allow Tri Star to conduct "unfettered discovery" into Plaintiff's medical history. This claim is without merit. First, the medical releases are limited to about four years prior to Plaintiff's lay off, at least two years *after* the onset of Plaintiff's alleged disability. Second, Plaintiff has only identified two medical providers. There is no reason to believe that Tri Star would send out medical releases and requests for information to medical providers other than those identified by Plaintiff. A blank medical release simply allows Tri Star to fill in the medical provider without Plaintiff having to sign multiple releases.

Plaintiff's claims that a medical release is unnecessary because "she has and is willing to produce information" and that she "never objected to producing all medical records" are not true. Plaintiff's objections are what necessitated the Court's involvement. Further, Plaintiff has yet to

---

[1] Plaintiff's suggestion that Tri Star did not engage in good faith efforts to resolve these discovery disputes is false. The discovery requests at issue were served in November 2020, and the parties have exchanged numerous communications regarding Plaintiff's deficient responses. Defendant offered to make revisions to the releases at issue, but Plaintiff suggested none. Defendant did not bring this issue to the Court's attention until after it made multiple attempts to resolve the dispute and, at that time, followed this Court's protocol for discovery disputes.

identify all medical providers since January 1, 2016, despite being ordered by this Court to do so by April 6, 2022.

Plaintiff has put her own medical history at issue by initiating ADA litigation; Tri Star has tailored its requests for her medical records as narrowly as possible. Tri Star is entitled to conduct thorough discovery into all relevant matters and should be permitted to obtain documents directly from the original source, especially given Plaintiff's reluctance to cooperate in discovery. Interrogatories and depositions are additional means of obtaining discovery, but Plaintiff's failure to provide complete interrogatory responses, even after being ordered to do so by this Court, further justifies Tri Star's need to obtain these documents directly from third parties to prepare for depositions as "any competent cross-examiner would want to see and use relevant documents in the course of such a deposition." *Quinn*, 2010 WL 3603780 at *1.

### D. The Temporal Limitations for Plaintiff's Medical Records Are Reasonable.

Tri Star seeks medical records going back to January 1, 2016. This is four years prior to the lay-off and at least two years after the onset of Plaintiff's alleged disability and the start of her employment at Tri Star. Plaintiff claims this time period is overbroad and cites two cases in support of this argument: *Ehrlich v. Union Pacific RR Co.*, 302 F.R.D. 620 (D. Kan. 2014), an opinion from the District of Kansas, and *Henne v. Great River Regional Library*, 2021 WL 6804560 (D. Minn. Jan. 4, 2021), an unpublished opinion from the District of Minnesota. Neither case supports Plaintiff's position.

*Ehrlich*, a wrongful death action stemming from an incident in which a minor child was struck and hit by a train, involves a dispute over whether medical files of the Defendant's employees should be produced. The Court ordered that the medical files for the five years leading up to the incident were relevant and must be produced. *Ehrlich*, 302 F.R.D. at 625. The Court

6

made a fact-specific determination and explained that the crew's health information was clearly relevant to determine whether any members of the crew had physical or mental problems which could have contributed to the incident. *Id.* at 627. Likewise, Ms. Andrews's medical history before and after her lay off is relevant to major issues in this case – whether she was disabled, whether she required accommodation, whether she was otherwise qualified, and whether she engaged in reasonable mitigation efforts. Appropriate temporal limitations on discovery, including medical records, depend on the specific facts of the case, and have been placed on Tri Star's medical releases as Tri Star seeks records for four years prior to the layoff, while *Ehrlich* supports at least a five-year parameter.

*Henne*, likewise, does not support Plaintiff's claims. *Henne* is an ADA claim in which the parties disputed whether the plaintiff was actually disabled. The *Henne* Court found that the plaintiff "placed her medical condition in controversy due to the nature of her claims in her Complaint, which require her to prove she was disabled and a qualified individual as defined by the ADA[.]" *Henne*, 2021 WL 6804560 at *12. The *Henne* Court found that all of "Plaintiff's medical records are plainly relevant to whether she was disabled and a qualified individual as defined by the ADA" and to "her claimed consequential emotional distress damages." *Id.* The Court held that the "relevancy extends prior to the date that Plaintiff alleges she was diagnosed with [the disability at issue]." *Id.* The Court then ordered the plaintiff to provide a signed medical authorization for records dating back to two years *prior to the onset* of her claimed disability. *Id.* at *13. This case, then, would support as reasonable and relevant a request for a signed authorization for records dating back to two years prior to the onset of Ms. Andrews's claimed disability. However, Tri seeks medical records beginning in 2016, at least two years *after* the onset

7

of Plaintiff's asthma.[2] Thus, even under the cases cited by Plaintiff, Tri Star's temporal limitations are more than reasonable.

### E. Plaintiff's Employment History Is Relevant to Central Issues in this Case.

Plaintiff's employment history – both before and after her employment with Tri Star – is relevant to her ability and efforts to mitigate, and to the central issue of whether she was disabled and required an accommodation, which is disputed. *See Gargas v. Estes Express Lines*, *Slip Op.*, 2021 WL 6000038, *3 (N.D. Ohio Dec. 20, 2021); *Levitin v. Nationwide Mut. Ins. Co.*, 2012 WL 6552814 (S.D. Ohio Dec. 14, 2012). Tri Star is not requesting this information under the "guise" of discovery as suggested by Plaintiff and is not seeking unfettered access into Plaintiff's employment history. Rather, Tri Star is seeking this information as actual, bona fide discovery in order to defend itself in this litigation. By initiating employment litigation, Plaintiff put her employment history at issue and cannot now avoid discovery of highly relevant information. Further, Plaintiff does not have an extensive employment history before or after working for Tri Star. She represents that she held one job prior to working for Tri Star and that she has had one job since being laid off. Plaintiff has produced wage information for her current position, which she began about fifteen months after she was laid off. However, her performance reviews, evaluations, requests for accommodation, applications, and self-described skills and abilities related to this position and any other she applied for are relevant, as they go to her ability and efforts to mitigate, and to whether she required an accommodation.

Additionally, Plaintiff represents that she has applied for 81 positions since she was laid off, including multiple positions at AmEx, Sony Music Nashville, the Tennessee Titans, the

---

[2] *Ehrlich* and *Henne* would support a longer timeframe for the releases; Tri Star reserves the right to request that should it become necessary to do so based on the contents of the records received under the proposed releases.

8

Nashville Predators, and Nashville SC, among others. Yet, she has produced no job applications. Many of the positions she applied for appear to be in person (not virtual) positions, such as "Associate Patient Services Specialist, Orthopedic Clinic" at Vanderbilt University, Office Manager for UTA, Executive Assistant at WMG, Universal Banker at Truist Bank, and Office Manager at Tik Tok. Plaintiff contends that her disability required an accommodation – permission to work from home. Employment records, which will be obtained using the release, will show whether Plaintiff requested this same accommodation in job applications submitted after she was laid off. This goes to Plaintiff's *prima facie* case – whether she was disabled such that she required an accommodation – and to her credibility. Further, while Plaintiff contends that she applied for several positions before she finally secured employment after being laid off, the first position she secured happened to come only days before COVID-19 unemployment benefits were set to expire in Tennessee. While Plaintiff claims that she did not turn down any job offers, the information she provided to potential employers, including whether she actually applied, is highly relevant to her mitigation efforts.

The least intrusive way to obtain this information is through a signed authorization from Plaintiff. Without it, Tri Star will be forced to send subpoenas to her current, former, and potential employers. That will require at least $500 in costs to serve, even if each subpoena is served by certified mail – the least expensive manner of service. This will be an unnecessary significant cost and is one reason employment releases are customary in these cases. Plaintiff has made no suggested revisions to the employment release, but it is limited in scope by its nature as Plaintiff's work history dates back only to 2012, a mere two years prior to the start of her employment at Tri Star. As with the medical authorizations, Tri Star has requested a blank release only so that Plaintiff need only complete one release. The release would be sent only to entities identified by

9

Plaintiff as current, former or potential employers to which she represents she has submitted applications.

### III. Conclusion

No good cause for a protective order exists. The requested releases will cause no burden to Plaintiff, and Tri Star has demonstrated a legitimate need for the signed authorizations in order to defend itself in this litigation. Thus, based on the foregoing, Plaintiff's Motion for a Protective Order should be denied and Plaintiff should be required to provide signed authorizations for medical and employment records in ten days.

Respectfully Submitted,

/s/ Elizabeth G. Hart
THE SWAFFORD LAW FIRM, PLLC
Tara L. Swafford BPR # 17577
Thomas Anthony Swafford, BPR # 17578
Elizabeth G. Hart, BPR # 30070
321 Billingsly Court, Suite 19
Franklin, Tennessee 37067
Telephone: (615) 599-8406
Facsimile: (615) 807-2355
tara@swaffordlawfirm.com
tony@swaffordlawfirm.com
betsy@swaffordlawfirm.com

*Attorneys for Tri Star Sports & Entertainment Group, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document has been served via the Court's Electronic Filing System on:

Roland Mumford
Law Offices of Roland Mumford & Assoc.
242 West Main Street, No. 223
Hendersonville, TN 37075
roland@mumfordlaw.net

Daniel Eduardo Arciniegas
Arciniegas Law
1242 Old Hillsboro Road
The Atrium Building
Franklin Tennessee 37069
Daniel@attorneydaniel.com

on this 13th day of April 2022.

                                                      /s/     Elizabeth G. Hart
                                                             Elizabeth G. Hart