IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHRISTIE ANDREWS,   )  <br>     Plaintiff,   )  <br>         )  <br> v.   )  <br>         )  <br> TRI STAR SPORTS AND   )  <br> ENTERTAINMENT GROUP, INC.,   )  <br>     Defendant.   ) | Case No. 3:21-cv-00526 <br> Judge Richardson/Frensley |

**ORDER**

**I. INTRODUCTION**

In this employment action, Plaintiff Christie Andrews alleges that her former employer, Tri Star Sports and Entertainment Group, Inc. ("Tri Star") violated her rights under the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq.*) by discriminating against her, failing to provide her with reasonable accommodations, and terminating her employment because of her disability. Docket No. 1 (Complaint). Tri Star has denied the substantive allegations and asserted affirmative defenses. Docket No. 8.

This matter is now before the Court upon a Motion for Protective Order filed by Ms. Andrews. Docket No. 29.[1] Tri Star has filed a Response in Opposition, and Ms. Andrews has filed a Reply. Docket Nos. 30, 31. For the reasons set forth below, Ms. Andrews's Motion (Docket No. 29) is **DENIED**.

**II. LAW AND ANALYSIS**

A. **Request for Protective Order**

Ms. Andrews provides this summary of the allegations that form the basis of her claims:

---

[1] This document is also a Supporting Memorandum of Law. The releases at issue in the Motion are attached. Docket Nos. 29-1, 29-2, 29-3.

> In March of 2020 [Ms. Andrews's] asthma was triggered in response to cleaning agents used by [Tri Star] in response to COVID-19. [Ms. Andrews's] asthma manifested itself as a cough, leading [her] immediate supervisor to send her home. [Ms. Andrews] requested a reasonable accommodation to work from home and supplied a supporting letter from her healthcare provider to [Tri Star]. The day after [Ms. Andrews] submitted her request and doctor's letter [Tri Star] terminated [her] employment. [Tri Star] claims [Ms. Andrews's] employment was terminated as part of a reduction in force.

Docket No. 29, p. 1.

As a means to obtain discovery, Tri Star has requested that Ms. Andrews sign blank forms authorizing the disclosure of her medical records by current and past providers and employment records from current, past, and prospective employers ("the releases"). Docket Nos. 29-1, 29-2, 29-3. Ms. Andrews filed this Motion seeking a protective order stating that she does not have to sign the releases and requests that the Court "prescribe a discovery method other than the releases selected by [Tri Star] [that] is less intrusive." Docket No. 29, p. 1.

A motion for a protective order is available to "a party or any person from whom discovery is sought." Fed. R. Civ. P. 26(c). The court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Good cause for the issuance of a protective order is established with "specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on merely conclusory statements." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir 2001) *quoting Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987).

Ms. Andrews has not articulated any facts, much less specific facts, showing a clearly defined and serious injury that is likely to result from the discovery sought.[2] *See* Docket Nos. 29,

---

[2] In a footnote, Ms. Andrews argues that there is no limitation on the "any and all" language included in the releases, noting that the categories of documents requested include "venereal

31. Instead, Ms. Andrews maintains that she "objected to signing releases because nothing in Fed. R. Civ. P. 34 explicitly permits a party to serve a release to obtain privileged medical and employment information from a third party." Docket No. 31, p. 1 (footnote omitted). Ms. Andrews states that she is "moving for a protective order to avoid embarrassment, annoyance, and oppression with her current employer and potential prospective employers" but offers no specific details to support this statement.[3] Docket No. 29, p. 8. She also asserts repeatedly that there is "no need" or "no reason" for her to sign the releases and Tri Star should pursue discovery through "less intrusive" or "more reasonable" means.[4] *See* Docket Nos. 29, 31. These general and conclusory statements do not meet the standard for a protective order.

B.  **Proportionality**

Ms. Andrews makes several arguments that essentially assert that the discovery sought is not proportional. She contends that the authorizations are "fatally overbroad on their face and are

---

disease test results." Docket No. 29, p. 2, n.1. While Ms. Andrews does not offer specific facts establishing that this information would likely lead to a clearly defined and serious injury, Tri Star states that it will "agree to modify the medical releases to remove this language." Docket No. 30, p. 5 (footnote omitted).

[3] While neither specific to her situation nor a fact, Ms. Andrews quotes an opinion from the Southern District of Indiana in which the Court stated that the employee in that case "has a legitimate concern that a subpoena sent to her current employer under the guise of a discovery request could be a tool for harassment and result in difficulties for her in her new job." Docket No. 29, p. 6-7 (internal quotation marks and citation omitted). To the extent that Ms. Andrews intends this quotation to be an assertion of difficulties she would face in her own job, the Court notes that receiving and executing a release signed by Ms. Andrews is likely to be much less onerous to Ms. Andrews's new employer than being required to respond to a subpoena, which Ms. Andrews suggests as an alternative and the Indiana Court decried. *See* Docket No. 29, p. 9.

[4] Although Ms. Andrews states that she "simply requests the records be produced to her first, so that she has an opportunity to review her personal health records before [Tri Star] is granted access" (Docket No. 29, p. 5), there is nothing preventing her from requesting and receiving her personal health records at any time she chooses. Indeed, she contends that she has already done so. *See* Docket No. 31, p. 3.

not reasonably tailored in temporal or topical scope."[5]  Docket No. 29, p. 2.  She argues that the discovery sought by the releases is duplicative and cumulative and suggests that "[i]nterrogatories and depositions are less intrusive means of obtaining information on the same point." *Id.* at 3.

> Discovery in federal court is governed by the Federal Rules of Civil Procedure, which provide that a party may request production of documents or other tangible items as long as the information sought is within the scope of discovery.  Fed. R. Civ. P. 34(a); *see also* Fed. R. Civ. P. 26(b)(1).  In general, the scope of discovery extends to nonprivileged information that is relevant to any party's claim or defense, regardless of whether the information sought is admissible, that is "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The Rules were amended, effective December 1, 2015, in part to address the alleged costs and abuses attendant to discovery.  Under Rule 26, "[t]here is now a specific duty for the court and the parties to consider discovery in the light of its 'proportional[ity] to the needs of the case . . . .'" *Turner v. Chrysler Grp. LLC*, No. 3:14-1747, 2016 U.S. Dist. LEXIS 11133, at *2, (M.D. Tenn. Jan. 27, 2016), *quoting* Fed. R. Civ. P. 26(b)(1).  The following factors are relevant to a consideration of whether the scope of discovery is proportional:
>
> (1) the importance of the issues at stake in the action,
>
> (2) the amount in controversy,
>
> (3) the parties' relative access to relevant information,
>
> (4) the parties' resources,
>
> (5) the importance of the discovery in resolving the issues, and
>
> (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (numbering added).  "Nevertheless, the scope of discovery is, of course, within the broad discretion of the trial court."  *United States v. Carell*, No. 3:09-0445, 2011 U.S.

---

[5] In a discovery conference, the Court previously addressed Ms. Andrews's concerns related to the temporal scope of the releases and it appears that Ms. Andrews is attempting to comply with the Court's "suggestion" in that regard.  *See* Docket No. 29, p. 5 ("Based on the phone conference the Court is suggesting 4 years prior to [Ms. Andrews's] request for reasonable accommodation.  Accordingly, [Ms. Andrews] will begin the process for obtaining records consistent with the Court's suggestion.").

Dist. LEXIS 57435 at *5 (M.D. Tenn. May 26, 2011), *quoting Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (internal quotation marks omitted).

The Court has considered the discovery at issue in light of the factors set forth in Rule 26 and concludes that it is proportional to the needs of the case. Here, the fifth and sixth factors (the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweigh its likely benefit) are especially persuasive. Because Ms. Andrews has put her health at issue in this litigation and must establish that she is a disabled person within the meaning of the ADA, her medical records are important in resolving the disputed issues. *See* 42 U.S.C. § 12102(2). Ms. Andrews's employment history (including her efforts to find work after being terminated by Tri Star) is important information that relates to whether she requires an accommodation and her efforts to mitigate her damages.

As to the potential burden or expense of the proposed discovery, Ms. Andrews does not argue that signing the releases would be burdensome or expensive. *See* Docket Nos. 29, 31. Meanwhile, Tri Star asserts that without the signed releases, it will have to pursue the same information through subpoenas, which will be more expensive and less convenient. Docket No. 30, p. 9. Ms. Andrews does not dispute these assertions. *See* Docket No. 31. Therefore, the Court concludes that the burden or expense of the proposed discovery does not outweigh its likely benefit.

### III. CONCLUSION

For the foregoing reasons, Ms. Andrews's Motion (Docket No. 29) is DENIED.

**IT IS SO ORDERED.**

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**