IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| CHRISTIE ANDREWS, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 3:21-cv-00526 |
| | ) | |
| v. | ) | Judge Eli J. Richardson |
| | ) | Magistrate Judge Jefferey S. Frensley |
| TRI STAR SPORTS AND | ) | |
| ENTERTAINMENT GROUP, INC., | ) | |
| | ) | JURY DEMAND |
| Defendant. | ) | |

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
TRI STAR SPORTS AND ENTERTAINMENT GROUP, INC.'S
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.01, Defendant Tri Star Sports and Entertainment Group, Inc. ("Tri Star" or "Defendant") respectfully submits this Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment.

1. Plaintiff Christie Andrews ("Andrews" or "Plaintiff") was employed full-time by Tri Star from mid-2014 until March 20, 2020. (Deposition of Christie Andrews, Aug. 23, 2022 ("Andrews Dep."), attached as Exh. A, 27:6-9, 158:17-19.)

   **RESPONSE:**

2. Plaintiff was laid off as a part of a reduction in force ("RIF") on March 20, 2020. (Deposition of Louise Taylor, Aug. 24, 2022 ("Taylor Dep."), attached as Exh. B, 39:20-40:8, March 18, 2020 Email, Exh. 17; *see also* Andrews Dep., 158:17-159:4, 162:9-14.)

   **RESPONSE:**

1

3. When her employment ended, Plaintiff was a Team Coordinator/AmEx Liaison working out of the Nashville office. (Andrews Dep., 56: 4-10.)

**RESPONSE:**

4. Team coordinator is classified by Tri Star as a "nonessential" position. (Taylor Dep., 39:2-5.)

**RESPONSE:**

5. Team coordinators are not permitted to work from home on a permanent or indefinite basis. (Taylor Dep., 39:2-5, 141:11-13; Andrews Dep. 46:15-47:12.)

**RESPONSE:**

6. The team coordinator position requires regular in-person interaction and collaboration with other team members, including through meetings that are not planned in advance, and access to documents and information that is housed on-site at Tri Star. (Taylor Dep., 108:17-109:2; Andrews Dep., 32:11-25, 33:16-34:7, 77:21-23; Declaration of Lou Taylor, Nov. 2, 2022 ("Taylor Decl."), attached as Exh. C, ¶¶ 3-8.)

**RESPONSE:**

7. Team coordinators are required to access sensitive client information, like financials and personal identifying information, to perform their jobs. (Taylor Decl., ¶ 8.)

**RESPONSE:**

8. At the beginning of March 2020, prior to the Covid-19 pandemic, Tri Star employed 132 people in two offices – one in Nashville and one in California. (Taylor Dep., 8:5-14; Taylor Decl., ¶ 11.)

**RESPONSE:**

9. The Covid-19 pandemic caused Tri Star to lose 25% of its revenues because of the complete loss of income from its touring department. (Taylor Dep., 54:21-55:19, 83:22-84:11, 93:1-24, 197:13-199:4; Andrews Dep., 163:23-164:2.)

**RESPONSE:**

10. This forced Tri Star to reduce its headcount and reorganize its workforce. (Taylor Dep., 83:22-84:11.)

**RESPONSE:**

11. Between March 13 and March 16, 2020, Tri Star determined that all "nonessential" employees who had requested to work from home for any reason would be laid off first. (Taylor Dep., 38:4-7,20-23, 43:7-8, 44:15-45:5,12-21, 83:24-84:3, 120:2-5, 130:16-19, 174:4-10; Deposition of Yolanda Simpson, Aug. 25, 2022 ("Simpson Dep."), attached as Exh. E, 110:20-23.)

**RESPONSE:**

12. Tri Star CEO Lou Taylor was the sole decision maker as to who would be included in the RIF. (Taylor Dep., 43:9-14, 120:14-20; Simpson Dep., 17:10-12, 32:7-12, 110:20-23; Deposition of Peggy Stephens, Aug. 24, 2022 ("Stephens Dep."), attached as Exh. F, 58:25-59:10.)

**RESPONSE:**

13. The decision was purely economic. (Taylor Dep., 40:5-8, 45:12-46:12, 82:21-83:12, 116:10-12, 117:10-12, 118:6-10.)

**RESPONSE:**

14. Equipping essential employees to work from home cost Tri Star more than $200,000. (Taylor Dep., 39:22-40:2, 120:7-17, 173.)

**RESPONSE:**

3

15. Plaintiff was classified as a "nonessential employee" who had requested to work from home and was, thus, included in the reduction in force. The decision to include Plaintiff in the RIF was made on March 16, 2020. (Taylor Dep., 39:2-20, 46:13-47:2, 120:14-20, Mar. 19, 2020 Email, Exh. 17 to Taylor Dep.; Simpson Dep., 17:10-12, 32:7-12.)

**RESPONSE:**

16. Plaintiff was not replaced; her job duties were distributed among remaining employees. (Taylor Dep., 104:8-12; Deposition of Heather Kinder, Aug. 25, 2022, attached as Exh. D ("Kinder Dep."), 57:13-59:16.)

**RESPONSE:**

17. Between March and June 2020, a total of 33 employees were laid off because of the Covid-19 pandemic. (Taylor Decl., ¶ 13.)

**RESPONSE:**

18. Ms. Taylor did not know Plaintiff had asthma at the time she was laid off. (Taylor Dep., 52:12-18, 96:21-23; Andrews Dep., 106:5-7.)

**RESPONSE:**

19. Plaintiff's sole claimed disability for purposes of this litigation is asthma. (Complaint, ¶ 58; Andrews Dep., 100:25-101:2; Plaintiff's Objections and Responses to First Set of Interrogatories, Exh. 39 to Andrews Dep., Interrogatory No. 17.)

**RESPONSE:**

20. Plaintiff's asthma has been "well-controlled" at all relevant times, and there has never been a time when her asthma was not well-controlled. (Andrews Dep., 157:3-14, 182:18-183:7.)

**RESPONSE:**

4

21. Ms. Andrews was diagnosed with asthma in high school during a routine sports physical. (Andrews Dep., 101:3-102:1.)

**RESPONSE:**

22. After her asthma diagnosis, Ms. Andrews was a cheerleader, professional dancer and actor in a theater company, and she moved to New York City to try and become a professional dancer there. (Andrews Dep., 11:6-10, 15:5-18, 16:8-24, 22:6-17, 101:3-102:1.)

**RESPONSE:**

23. During her employment with Tri Star, Plaintiff participated on an exhibition cheerleading team, which she talked about often. (Andrews Dep., 22:10-18; Kinder Dep., 33:5-9; Taylor Dep., 166:21-167:7, 168:8-16.)

**RESPONSE:**

24. Plaintiff worked out at Crossfit gyms during her employment at Tri Star and as late as March 2020; she has described her Crossfit workouts as 100-200 minutes of exercise with heavy exertion, two to three times per week. (Andrews Dep., 20:13-21:13, 180:14-18.)

**RESPONSE:**

25. Ms. Andrews now participates in gymnastics two days a week, as long as her schedule allows. (Andrews Dep., 18:12.)

**RESPONSE:**

26. Ms. Andrews has never been hospitalized overnight for asthma. (Andrews Dep., 113:21-115:4.)

**RESPONSE:**

5

27. Plaintiff's asthma does not interfere with her ability to function or engage in normal life activities. (Andrews Dep., 20:15-21:13, 23:25-26:16, 110:5-20, 123:25-125:17, 180:14-18.)

**RESPONSE:**

28. On March 16, 2020, Nurse Practitioner Autumn Nelson, Plaintiff's primary health care provider, wrote to Ms. Andrews regarding her asthma and Covid-19, "The best thing you can do is wash your hands, work from home if you are able. If you have any symptoms, you need to self-quarantine." Ms. Nelson did not direct Ms. Andrews to work from home or to avoid going in to the office. (Andrews Dep., 185:15-186:1; Tri Star Medical Group Notes, Exh. 28 to Andrews Dep.)

**RESPONSE:**

29. On March 16, 2022, Tri Star employees used Lysol aerosol spray in the office in an effort to combat Covid-19. (Andrews Dep., 127:8-128:12.)

**RESPONSE:**

30. Plaintiff began coughing upon breathing in lingering aerosol spray and was required to use her inhaler. (Id.)

**RESPONSE:**

31. No one witnessed her using her inhaler that day and she cannot identify any other time she used her inhaler at Tri Star. (Andrews Dep., 130:23-131:2, 132:25-133:20.)

**RESPONSE:**

32. Ms. Andrews did not ask anyone to stop using the aerosol spray in the office. (Andrews Dep., 130:23-131:2, 132:25-133:10.)

**RESPONSE:**

6

33. After using her inhaler, Ms. Andrews returned to her desk and worked for the remainder of the day. (Id; Andrews Dep., 155:9-11.)

**RESPONSE:**

34. That afternoon, Plaintiff requested to work from home indefinitely. (Andrews Dep., 138:4-6, 139:25-140:11, Mar. 16, 2020 Email, Exh. 13 to Andrews Dep.)

**RESPONSE:**

35. In support of her request, Plaintiff communicated to Bryan Luecke and Yolanda Simpson that she had "a doctor who's pissed at me and called me irresponsible for not staying home[.]" (Andrews Dep., 147:13-22; Mar. 16, 2020 Email, Exh. 13 to Andrews Dep.)

**RESPONSE:**

36. This "doctor" is Ms. Andrew's best friend, Emily Mara, a wound care nurse who does not provide medical treatment to Plaintiff. (Andrews Dep., 64:9-14, 147:13-148:10.)

**RESPONSE:**

37. Ms. Simpson told Plaintiff to come to work the next day unless she was sick. Around 5:00 pm on Monday, March 16, 2020, Plaintiff told Ms. Simpson that she would be in the office the next day. She did not mention her asthma, a cough, or cleaning products. (Mar. 16, 2020 Email, Exh. 13 to Andrews Dep.)

**RESPONSE:**

38. That night, Plaintiff asked Ms. Nelson for a note that says she has asthma so that she can work from home. She did not mention her cough, the need to use her inhaler that day, or the aerosol cleaning products. (Andrews Dep., 187:5-12; Tri Star Medical Group Notes, Exh. 28 to Andrews Dep.)

**RESPONSE:**

7

39. Ms. Andrews would have retracted her request to work from home if given the opportunity. (Andrews Dep., 238:10-18.)

**RESPONSE:**

40. On March 17, 2022, Ms. Andrews emailed a note from her medical provider, Ms. Nelson, which states that Plaintiff has "well-controlled" asthma and would "benefit" from working from home. This is the only medical documentation Plaintiff provided to Tri Star in support of her request to work from home. (Complaint, ¶ 32; Andrews Dep., 156:12-157:14, 187:13-25, March 17, 2020 Medical Note, Exh. 16 to Andrews Dep.)

**RESPONSE:**

41. If Plaintiff had not been included in the RIF in March 2020, she would have been included in a subsequent round of layoffs. (Taylor Dep., 88:19-89:2.)

**RESPONSE:**

42. Plaintiff did not request any type of accommodation from her current employer or from any other employer she applied to work for after her employment with Tri Star ended. (Andrews Dep., 213:17-19, 233:23-234:9.)

**RESPONSE:**

43. Since her Tri Star employment ended, Plaintiff has traveled domestically and internationally. (Andrews Dep., 23:25-26:16.)

**RESPONSE:**

44. Plaintiff was late to work often during her Tri Star employment. (Andrews Dep., 75:11-19; Kinder Dep., 118:7-119:3, 128:8-20.)

**RESPONSE:**

45. Ms. Andrews's attendance issues were reflected in deliverables that she failed to meet. (Id; Stephens Dep., 73:19-21.)

**RESPONSE:**

46. No team coordinator has been assigned permanent or indefinite work from home status either before or after March 2020. (Taylor Dep., 141:11-13; Andrews Dep., 46:15-47:12.)

**RESPONSE:**

47. Equipping any employee to work from home requires secure mobile office equipment. (Taylor Decl., ¶ 9.)

**RESPONSE:**

Respectfully Submitted,

/s/ Elizabeth G. Hart
THE SWAFFORD LAW FIRM, PLLC
Tara L. Swafford BPR # 17577
Thomas Anthony Swafford, BPR # 17578
Elizabeth G. Hart, BPR # 30070
321 Billingsly Court, Suite 19
Franklin, Tennessee 37067
Telephone: (615) 599-8406
Facsimile: (615) 807-2355
tara@swaffordlawfirm.com
tony@swaffordlawfirm.com
betsy@swaffordlawfirm.com

*Attorneys for Tri Star Sports & Entertainment Group, Inc.*

**CERTIFICATE OF SERVICE**

       I hereby certify that a true and correct copy of the foregoing document has been served via the Court's Electronic Filing System on:

Daniel Eduardo Arciniegas
Arciniegas Law
1242 Old Hillsboro Road
The Atrium Building
Franklin Tennessee 37069
Daniel@attorneydaniel.com

on this 3rd day of November 2022.

                                                /s/      Elizabeth G. Hart
                                                      Elizabeth G. Hart