# EXHIBIT E

```
 1        IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF TENNESSEE
 2                NASHVILLE DIVISION

 3
        CHRISTIE ANDREWS,              )
 4                                     )
                 Plaintiff,             )
 5                                     )
        vs.                            )  CASE NO.
 6                                     )  3:21-cv-00526
        TRI STAR SPORTS AND            )
 7      ENTERTAINMENT GROUP, INC.,     )
                                       )
 8               Defendant.             )
                                       )
 9      _____

10

11

12

13
        VIDEOTAPED DEPOSITION OF:
14
        YOLANDA SIMPSON
15
        Taken on behalf of the Plaintiff
16
        August 25, 2022
17

18

19

20

21

22

23

24

25
```

1

Case 3:21-cv-00526   Document 40-5   Filed 11/03/22   Page 2 of 7 PageID #: 441

```
 1   APPEARANCES:

 2   For the Plaintiff:

 3        DANIEL ARCINIEGAS, ESQ.
          Arciniegas Law
 4        1242 Old Hillsboro Road
          The Atrium Building
 5        Franklin, Tennessee 37069-9129
          629.777.5339
 6        Daniel@attorneydaniel.com

 7   For the Defendants:

 8        TARA SWAFFORD, ESQ.
          ELIZABETH "BETSY" HART
 9        The Swafford Law Firm, PLLC
          321 Billingsly Court
10        Suite 19
          Franklin, Tennessee 37067
11        615.599.8406
          Betsy@swaffordlawfirm.com
12        Tara@swaffordlawfirm.com

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1           Q.      What do you mean "the volume"?
 2           A.      You know, that it would affect
 3   the whole world.
 4           Q.      Okay.  And so when did you first
 5   learn about a reduction in force?
 6           A.      When I came back from vacation.
 7   So I got back from vacation, I think it was, like,
 8   March the 7th or 8th.
 9           Q.      Okay.  Tell me about that.
10           A.      I was just told that we were
11   looking at essential versus nonessential, and that
12   I'd receive a list of the -- who would be termed.
13           Q.      Okay.  And who told you that?
14           A.      That came from, I believe,
15   Heather.
16           Q.      Heather, who?
17           A.      Kinder.
18           Q.      And how did it come to you?
19           A.      Just word of mouth.
20           Q.      Well, did she tell -- did it come
21   out of her, Ms. Kinder's mouth that there would be
22   --
23           A.      I don't remember.  I'm just
24   saying, I -- you know, my main point of contact
25   was with Heather.
```

1          Q.      All right.  Do you have -- do you
 2   recall having any, like, login credentials under,
 3   like, Indeed.com or any other websites where
 4   individuals look for job postings?
 5          A.      I don't remember having any other
 6   sign-ins for other job career posting sites.
 7          Q.      What was your understanding of
 8   nonessential versus essential employees at Tri
 9   Star?
10          A.      I really do not have -- did not
11   have an understanding about that, because that
12   wasn't a decision that I played a part in.
13          Q.      So if you're not involved in --
14   with the decision, you did have involv- --
15   involvement after the decision had been made; is
16   that fair?
17          A.      Yes.
18          Q.      Okay.  And one of the things
19   you've described is, like, keeping track of
20   certain information; is that fair?
21          A.      Yes.
22          Q.      And you collaborated with Ms.
23   Kinder in how to -- to track that information?
24          A.      Yes.
25          Q.      What was your understanding of

```
 1  tell?
 2       A.    I would assume it means the day
 3  that the approval was given.
 4       Q.    Approval for what, though?
 5       A.    Based on this sheet, I guess, for
 6  their status.
 7       Q.    Okay.  To work from home?
 8       A.    I'm not sure.
 9       Q.    Okay.  Next column, "Policy
10  Signed," what is the policy to be signed, do you
11  recall?
12       A.    There was a, I think it was the
13  laptop sign-out sheet that I remember, if somebody
14  was being assigned a lapsho- -- a laptop, that
15  they needed to sign.  But I don't recall if that
16  was the only document or not.
17       Q.    Okay.  Because if you look at the
18  next column, it says "Letter Signed," right?
19       A.    Uh-huh.
20       Q.    What is -- what is your
21  recollection of "Letter Signed"?
22       A.    That laptop-issued document that
23  I was just referring to.
24       Q.    Okay.  So what's the -- so it's
25  both -- it's your recollection, right, sitting
```

1    Q.    Was there anything particular on
2  that website with reference to how to complete
3  these in the context of a reduction in force or
4  layoffs?
5         A.    I don't remember.  I made the --
6  I made the selection that was -- is most accurate
7  based on what was going on, in my opinion.
8         Q.    Okay.  What is your underst- --
9  what is your understanding of the difference
10 between "lack of work" and "discharge"?
11        A.    Well, because it was
12 nonessential, her job function, as I remember it,
13 it was because we didn't have work for
14 nonessential employees based on the needs of the
15 business.
16        Q.    Okay.  And did you under- -- and
17 who gave -- who informed you that Ms. Andrews was
18 -- who did you rely upon for that?
19        A.    The -- the list that I got, or
20 whatever.  The notification I received as to who
21 was being discharged, whose roles were being
22 eliminated.  And that would have ultimately came
23 from Lou.
24        Q.    Okay.  Those are all the
25 questions I have for you.  Thank you.

Case 3:21-cv-00526   Document 40-5   Filed 11/03/22   Page 7 of 7 PageID #: 446