IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| **CHRISTIE ANDREWS,** | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 3:21-cv-00526 |
| | ) | |
| v. | ) | Judge Eli J. Richardson |
| | ) | Magistrate Judge Jefferey S. Frensley |
| **TRI STAR SPORTS AND** | ) | |
| **ENTERTAINMENT GROUP, INC.,** | ) | |
| | ) | **JURY DEMAND** |
| Defendant. | ) | |

**TRI STAR SPORTS AND ENTERTAINMENT GROUP, INC.'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

Defendant Tri Star Sports and Entertainment Group, Inc. ("Tri Star") respectfully submits this Reply to Plaintiff's Response to Motion for Summary Judgment.[1]

**I.      Plaintiff Is Not Disabled.**

Plaintiff has failed to prove she is disabled within the meaning of the ADA. Though nowhere in the Complaint, Plaintiff now contends that she was at an increased risk of complications from Covid-19 because she is immunocompromised due to asthma, citing the Center for Disease Control (the "CDC") and Mayo Clinic. (Doc. 57, pp. 2-4.) These websites do not prove that Plaintiff's asthma put her at higher risk. In fact, the only proof in the record is Plaintiff's testimony that she believed she was at higher risk based on the news, and conversations with her aunt, who she *thinks* is a nurse, and her best friend who is a nurse. This does not meet Plaintiff's burden. Nor can she meet the "regarded as" definition of disability, which protects employees who can do the job "but are rejected because of the myths, fears, and stereotypes associated with disabilities." *Stinson v. Nissan North America Inc.*, 2019 WL 6174841, *7 (M.D. Tenn. Nov. 11,

---

[1] Plaintiff is now claiming – for the first time – that Tri Star retaliated against her. (Doc. 57, pp. 1-2.) Plaintiff did not plead a count for retaliation in the Complaint and cannot now claim retaliation through a back door.

1

2019). There is no proof that Tri Star believed – mistakenly or otherwise – that she was immunocompromised. She put herself into that category when she requested to work from home. The remaining categories for these requests – childcare needs or living with immunocompromised person – were inapplicable. Further, there is no proof that Plaintiff was targeted *because* of a mistaken belief about her, as required to succeed under the regarded as definition of disability. *Id.*

In an effort to camouflage her wholesale lack of evidence, Plaintiff repeatedly argues that whether an employee is "disabled" under the ADA does not require extensive analysis. However, "the ADAAA left untouched the plaintiff's burden of proof in a disability case; he still has to prove he has a disability." *Whitesell v. FMS Financial Mgmt. Svcs., LLC*, *slip op.*, 2020 WL 2770017, *4 (M.D. Tenn. May 28, 2020) (quotations and citations omitted). This, Plaintiff agrees with. (Doc. 57, p. 1.) Indeed, the ADA regulations expressly note that "not every impairment will constitute a disability within the meaning of this section." 29 C.F.R. § 1630.2(j).

Plaintiff contends her breathing is also impaired due to her asthma and that she is only able to engage in physical activities after employing mitigating measures, which should not be taken into account. However, as the 29 C.F.R. § 1630.2 Notes instruct, "an individual who, because of the use of a mitigating measure, has experienced no limitations, or only minor limitations, related to the impairment may still be an individual with a disability, *where there is evidence that in the absence of an effective mitigating measure the individual's impairment would be substantially limiting*." 29 C.F.R. § 1630.2(j)(1)(vi) Mitigating Measures Notes (emphasis added). As this Court has noted, asthma "present[s] in varying levels of severity," and Plaintiff must demonstrate that it substantially limits a major life activity. *Whitesell*, 2020 WL 2770017 at *7. The record contains no proof that Plaintiff would experience substantial limitations without her medication. In fact, the only proof in the record confirms that her asthma is well-controlled – not a disability.

II.     **Plaintiff's Criticisms of Tri Star's Citations Are Incorrect.**

2

Plaintiff criticizes Tri Star for citing *Sutton v. United Air Lines, Inc.* (Doc. 57, p. 12) but Tri Star did not cite this case.[2] Plaintiff also takes issue with Tri Star's reliance on *Gergen v. City of Kentwood*, arguing that it was "expressly rejected in the ADAAA." (*Id.*, p. 11, FN 8.) This, again, is incorrect. Plaintiff cites no authority that "expressly" rejects *Gergen* and, to the contrary, this Court cited *Gergen* as authoritative as late as 2020 in *Whitesell*. While the ADA was amended in 2008 to broaden the scope of its protection, courts, including this one, continue to use existing case law to analyze whether a person is ADA disabled. *See Whitesell*, 2020 WL 2770017 at *4.

### III. Tri Star's Reduction in Force Is a Legitimate Non-Discriminatory Reason.

It is undisputed that the Covid-19 pandemic began in the U.S. in March 2020. It is undisputed that because of the pandemic, Tri Star lost 25% of its revenues. This forced Tri Star to reduce its headcount by 25%. Plaintiff was included in this reduction. It is undisputed that Plaintiff was not singled out for inclusion in the RIF – there is no evidence to the contrary. Given the overwhelming undisputed proof of these facts, it will be impossible for Plaintiff to prove that she was laid off because of her disability and that Tri Star's stated reason is pretextual.

### IV. Plaintiff Cannot Show She Was Targeted in the Reduction in Force.

Plaintiff contends that Tri Star invited employees to request to work from home, then engaged in a "bait and switch" when it terminated Plaintiff. This is untrue. Tri Star communicated that it would accommodate needs to work from home "to the best of our ability" and that requests would be evaluated individually. (Doc. 40-1, p. 77.) Tri Star ultimately determined that essential employees who met certain qualifications – including a medical need – would be permitted to work from home, and that nonessential employees would not, regardless of the reason for the need to work from home. Plaintiff admits that to establish a *prima facie* case of discrimination, she must

---

[2] Plaintiff also makes an issue over Tri Star's reliance on some pre-amendment case law. Plaintiff is aware that this argument is disingenuous, as she also relies on pre-amendment case law. (*See e.g.* Doc. 57, pp. 13, 15, 16, 20-22.)

3

show that she was singled out. She also admits that there was no individualized analysis as to who would be included in the first round of the RIF. (Doc. 57, pp. 10, 20.) Without such, no reasonable jury could ever conclude that Tri Star targeted Plaintiff individually. Further, the record contains no statistical data showing any disparity, as required to make out a *prima facie* case of disparate impact. *See Shollenbarger v. Planes Moving & Storage*, 297 Fed. Appx. 483, 485 (6th Cir. 2008).

## V. Tri Star's Paycheck Protection Program ("PPP") Loan Is Irrelevant.

Plaintiff contends that Tri Star's PPP loan makes summary judgment inappropriate.[3] The CARES Act was not effective until March 27, 2020, after Plaintiff's termination. *See* 15 U.S.C. § 9001, *et al*. Any action that Tri Star took in relation to the CARES Act is irrelevant to this motion. Plaintiff's arguments also fundamentally misunderstand that any PPP calculation was statutorily based on employment figures from 2019 and only required a 60% retention rate.[4]

## VI. Plaintiff Relies on Misstated Testimony as to Material Issues.

In multiple instances in her brief, Plaintiff misstates testimony or omits material context, and Tri Star needs to correct this lack of candor to the Court:[5]

> Incorrect Assertion: Plaintiff says that she told Tri Star HR "that a healthcare provider friend called her irresponsible for not staying home." (Doc. 57, p. 5.)
> Fact: Plaintiff falsely told Tri Star that she had "a doctor who's pissed at me and called me irresponsible for not staying home[.]" (Doc. 47, ¶¶ 34-36.) No such doctor existed.
>
> Incorrect Assertion: "As Amex Liaison, [Plaintiff] handled all of the 100+ clients with Amex cards." (Doc. 57, p. 3.)
> Fact: The number 100 is based on a hypothetical from Plaintiff's counsel; Ms. Kinder expressly testified that she does not know how many clients have AmEx cards. (Ex. B to Response to Additional Facts, Kinder Deposition, 56:24-57:8.)
>
> Incorrect Assertion: Bryan Luecke sent Plaintiff home on March 16, 2020, after her asthma was triggered by aerosol spray at work. (Doc. 57, p. 5.)

---

[3] Tri Star has moved to strike these arguments as there is no admissible evidence in the record related to the PPP application and Plaintiff's Exhibit 50 is inadmissible, but will address the argument out of an abundance of caution.
[4] Small Business Act, 15 U.S.C. § 636(a)(36)(E); 15 U.S.C. § 636m(d)(8);.
[5] These facts are not included in Plaintiff's Statement of Additional Facts as required by Local Rule 56.01, preventing Tri Star from refuting them there, as contemplated by the Local Rules of this Court.

4

> Fact: Plaintiff testified that she worked a full day on March 16 – she was not sent home. (Doc. 47, ¶ 33.) Also, Mr. Luecke told Plaintiff to stay home on March 17, 2020, because he was concerned that she was Covid positive. (Doc. 40-1, p. 79.)

### VII. Working from Home Would Have Caused an Undue Hardship.

Plaintiff argues that in-person attendance was not an essential function because it was not in the job description.[6] However, the description was created prior to the pandemic, when in-person attendance was the default, and it is undisputed that no Team Coordinator was permitted to work from home indefinitely. (Doc. 47, ¶ 5.) Through inadmissible or irrelevant declaration testimony, Plaintiff contends that employees in other positions (not Team Coordinators) accessed information or participated in meetings remotely. This misses the point that Team Coordinators were required to be physically present in the office because of their specific job duties. Working from home was not an option. Further, Plaintiff does not dispute that Tri Star incurred significant expense equipping essential employees to work from home. (Id.) Plaintiff inexplicably suggests that Tri Star should have hired a temporary worker – in the middle of a RIF – to fulfill Plaintiff's in-person job duties. Putting aside the absurdity of that argument, any conversation with Plaintiff regarding a possible accommodation would have been futile as there was no option for her to work remotely, and she would have been laid off in the next round. Regardless, the decision to terminate Plaintiff was made before her request to work at home. (Id. at ¶¶ 11, 34.)

### CONCLUSION

Plaintiff cannot make the threshold showing that she is disabled or that she was targeted through the reduction in force. Thus, she cannot succeed on her claim. No genuine issue of material fact exists, and summary judgment should be entered.

---

[6] Plaintiff "directs" the Court to Tri Star job postings, citing to one line of Ms. Taylor's deposition that has nothing to do with job postings. To the extent Plaintiff is "directing" the Court to conduct an online search of Tri Star job postings, that would not be proper, and Tri Star objects as this would require the inclusion of documents that are not in the record and have not been submitted in any type of admissible format.

5

Respectfully Submitted,

/s/ Elizabeth G. Hart
THE SWAFFORD LAW FIRM, PLLC
Tara L. Swafford BPR # 17577
Thomas Anthony Swafford, BPR # 17578
Elizabeth G. Hart, BPR # 30070
321 Billingsly Court, Suite 19
Franklin, Tennessee 37067
Telephone: (615) 599-8406
Facsimile: (615) 807-2355
tara@swaffordlawfirm.com
tony@swaffordlawfirm.com
betsy@swaffordlawfirm.com

*Attorneys for Tri Star Sports & Entertainment Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via the Court's Electronic Filing System on:

Daniel Eduardo Arciniegas
Arciniegas Law
1242 Old Hillsboro Road
The Atrium Building
Franklin Tennessee 37069
Daniel@attorneydaniel.com

on this 11th day of January 2023.

/s/   Elizabeth G. Hart
Elizabeth G. Hart