IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CHRISTIE ANDREWS,                    )
                                     )
        Plaintiff,                   )
                                     )        NO. 3:21-cv-00526
v.                                   )
                                     )
TRI STAR SPORTS AND                  )        JUDGE RICHARDSON
ENTERTAINMENT GROUP, INC.,           )
                                     )
        Defendant.                   )

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a motion for summary judgment (Doc. No. 38, "Motion") filed by Defendant, Tri Star Sports and Entrainment Group, Inc. Defendant filed an accompanying memorandum in support of the Motion (Doc. No. 39). Plaintiff, Christie Andrews, filed a response (Doc. No. 57),[1] and Defendant filed a reply (Doc. No. 61). For the reasons stated herein, the Motion will be granted.

---

[1] Plaintiff first filed a response that exceeded the twenty-five-page limit set by the Local Rules. (Doc. No. 46). The Court thereafter denied (Doc. No. 50) Plaintiff's motion for leave to file excess pages (Doc. No. 45). Plaintiff then filed an amended response that conformed to the twenty-five-page limit. (Doc. No. 57).

The crux of this case is whether Plaintiff's asthma constitutes a disability[3] under the Americans with Disabilities Act ("ADA"). Plaintiff was employed by Defendant, Tri Star Sports and Entertainment Group, Inc., from mid-2014 to March 20, 2020. (Doc. No. 47 at 1). Defendant terminated Plaintiff's employment on March 20, 2020. (*Id.*).

Defendant contends that Plaintiff was terminated as part of a reduction in force brought on by the COVID-19 pandemic, whereas Plaintiff asserts that she was terminated due to her asthma. (*Id.* at 1–2, 7).

At the time that Plaintiff was terminated, she was a Team Coordinator and was designated as the American Express liaison. (*Id.* at 2). Defendant does not permit team coordinators to work remotely on a permanent basis. (*Id.*). Plaintiff has suffered from asthma since she was in high school. (*Id.* at 8). Despite her asthma, Plaintiff has maintained an active lifestyle since her diagnosis. Following her diagnosis, Plaintiff was a cheerleader, professional dancer and actor in a theater company, and also tried to become a professional dancer in New York City. (*Id.* at 9). During her employment by Defendant, Plaintiff worked out at Crossfit gyms, which entails workouts lasting 100 to 200 minutes with heavy exertion. (*Id.*). Plaintiff participated in this type

---

[2] The facts contained in this section are taken from Plaintiff's response (Doc. No. 47) to Defendant's statement of undisputed facts (Doc. No. 40). The facts are undisputed, inasmuch as Plaintiff indicates in such response (Doc. No. 47) that she does not dispute them. Notably, the second paragraph in this section does not set forth facts, but rather identifies key disputed contentions of the respective parties.

[3] The ADA refers to persons having a "disability," rather than to persons being "disabled." For this reason, and because the Court perceives that it is generally and appropriately considered more accurate and sensitive to refer to someone as merely *having* a condition (a disability) rather than *being* something ("disabled"), the Court endeavors to use the former rather than the latter phrasing. But given the terminology used by some of the courts cited herein, that is not always the best option. In any event, the Court discerns (and intends to convey) no substantive conceptual distinction between having a disability and being disabled, and it uses the terms interchangeably.

of workout two to three times a week. (*Id.*). Plaintiff now participates in gymnastics twice a week. (*Id.* at 10).

On March 16, 2022, Defendant's employees used Lysol spray in the office in an effort to combat COVID-19. (*Id.* at 11). Upon breathing in lingering aerosol spray, Plaintiff began coughing and was required to use her inhaler. (*Id.*). Plaintiff then returned to her desk and worked the remainder of the day. (*Id.* at 12). Sometime later, Plaintiff requested to work from home for an unlimited period of time. (*Id.*). Plaintiff was then terminated on March 20, 2022. (*Id.* at 5).

## PROCEDURAL BACKGROUND

Plaintiff filed this action on July 9, 2021. (Doc. No. 1). The complaint contains a single count for "discrimination in violation of the ADA and failure to provide a reasonable accommodation in violation of the ADA." (*Id.*). Defendant has moved for summary judgment on the single count. (Doc. No. 38). Plaintiff filed a response (Doc. No. 47), and Defendant filed a reply (Doc. No. 61). The Court notes that although Plaintiff included a claim of disability discrimination and a claim of failure to accommodate in a single count in the complaint, the two claims are distinct, and the Court addresses each one separately below.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248.

On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006) (citing *Anderson*, 477 U.S. at 248), *abrogated on other grounds by Young v. Utd. Parcel Serv.*, 575 U.S. 206 (2015). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634–35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Alternatively, the moving party may meet its initial burden by otherwise "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support a material fact (for example, the existence of an element of a nonmovant plaintiff's claim)." Fed R. Civ. P. 56(c)(1)(B). If the summary judgment movant meets its initial burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628.[4] Importantly, "[s]ummary judgment for a defendant [that has met its initial burden as the movant] is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999) (quoting *Celotex*, 477 U.S. at 322).

---

[4] Courts (appropriately) at times refer interchangeably to a party being able to raise a genuine issue as to a fact and a reasonable jury being able to find in the party's favor on that fact, and this Court does likewise.

Any party asserting that a fact cannot be or genuinely is disputed—*i.e.*, any party seeking summary judgment and any party opposing summary judgment, respectively—can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii) that contrary to the claim of the adverse party, the materials cited by the adverse party do not actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact.

In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018);

*Mangum v. Repp*, 2017 WL 57792 at *5 (6th Cir. Jan. 5, 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

The Court will take a moment here to discuss the *McDonnell Douglas* standard and its applicability to motions for summary judgment in the context of employment-discrimination claims in the federal judicial system. The Sixth Circuit has summarized the applicability and workings of the *McDonnell Douglas* burden shifting framework as follows:

> A plaintiff may show discrimination by direct evidence, or a plaintiff lacking direct evidence of discrimination may succeed on a Title VII claim by presenting indirect evidence under the framework first set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).

> To succeed under the *McDonnell Douglas* framework, the plaintiff must first make out a *prima facie* case of discrimination by a preponderance of the evidence. . . . Once the plaintiff makes out a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. Should the defendant do so, the plaintiff then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination.

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019) (citations omitted).

The burden-shifting approach in *McDonnell Douglas* applies only to discrimination or retaliation claims premised on so-called indirect (*i.e.*, circumstantial) evidence.[5] *See id.*. The undersigned has explained:

> When a defendant-movant challenges a plaintiff's ability to reach a jury on an indirect-evidence theory of employment discrimination, there are a number of steps potentially implicated, though not all of them necessarily need be addressed in the analysis. The number of steps to be addressed depends on whether the defendant-movant seeks to prevail at the first step, or at the second and third step, or at both the first step and the second and third step . . .

---

[5] "Direct evidence is such that, if true, requires the conclusion that unlawful retaliation [or discrimination] was a motivating factor without any inferences or presumptions." *Banks v. Bosch Rexroth Corp.*, 15 F. Supp. 3d 681, 693 (E.D. Ky. 2014), *aff'd*, 610 F. App'x 519 (6th Cir. 2015) (citing *Norbuta v. Loctite Corp.*, 181 F.3d 102 (6th Cir. 1999)). Indirect evidence is evidence that requires the court to make inferences to conclude that unlawful retaliation or discrimination was a motivator for an adverse employment action.

To prevail at the first step of *McDonnell-Douglas*, the defendant, as the summary-judgment movant, must meet its initial burden of showing an absence of evidence from which a reasonable jury could find the plaintiff established a *prima facie* case. *E.g., Banks v. State of Ohio*, No. 94–3866, 1995 WL 118993, * 2 (6th Cir. Mar. 20, 1995). If the defendant does so, then the burden shifts to the plaintiff to show that at trial it could "make out a *prima facie* case of discrimination by a preponderance of the evidence." *Redlin*, 921 F.3d at 606. If the plaintiff fails to succeed here, then the plaintiff suffers summary judgment in favor of the defendant on the claim. But if the plaintiff succeeds here, defendant does not prevail at the first step and is relegated to try instead to prevail at the second and third steps of *McDonnell-Douglas.*

At the second step, the defendant-movant has the burden (of production only) to show a legitimate and non-discriminatory reason for its action(s). *Brown*, 814 F. App'x at 80 (noting, on the defendant's motion for summary judgment that it is a "burden of production [that potentially] shifts to the defendant to show a legitimate, nondiscriminatory reason for the way it treated the plaintiff"). If the defendant successfully shows evidence of a non-discriminatory reason for its alleged discriminatory act, the court proceeds to the third step, where "the plaintiff must rebut the proffered reason by producing evidence from a which a reasonable jury could conclude that the proffered reason is actually a pretext" for unlawful discrimination. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020) (quotations omitted).

*Veith v. Tyson Fresh Meat, Inc*., No. 3:19-CV-01065, 2022 WL 1231229, at *9-10 (M.D. Tenn. April 26, 2022).

As will be further discussed below, one of Plaintiff's claims is premised on indirect evidence and thus subject to the *McDonnell Douglas* framework.

<u>DISCUSSION</u>

Plaintiff has pled, in a single count, both disability discrimination and failure to accommodate in violation of the Americans with Disability Act ("ADA"). (Doc. No. 1 at 8). "The ADA prohibits an employer from 'discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Morrissey v. Laurel Health Care Co.* 946 F.3d 292, 299 (6th Cir. 2019) (quoting

42 U.S.C. § 12112(a)). "ADA discrimination claims are analyzed under two different rubrics, depending on whether the plaintiff relies on 'direct' or 'indirect' evidence of discrimination." *Id.* Plaintiff purports to rely on both direct and indirect evidence. (Doc. No. 57).

Notably, any claim of discrimination under the ADA (whether brought under a direct-evidence or indirect theory) requires Plaintiff to establish that she has a disability under the ADA. "A prima facie [indirect-evidence] case of disability discrimination under the ADA requires that a plaintiff show: 1) he or she is disabled;[6] 2) otherwise qualified for the position, with or without reasonable accommodation;[7] 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Keogh v. Concentra*

---

[6] Although courts often refer to the requirement of having a disability as a requirement that the plaintiff "*is*" disabled, the requirement is more accurately stated as mandating that the plaintiff "*was*" disabled at the time that the plaintiff suffered the adverse employment action(s) at issue. Indeed, a determination that a plaintiff is disabled at the time that a court resolves a pending motion speaks very little to the question of whether the defendant violated the ADA when the defendant took an allegedly adverse employment action against the plaintiff. Indeed, even if a plaintiff *is* not disabled at the time a court resolves the plaintiff's ADA claims, it is conceivable that the plaintiff *was* disabled at the time that he or she suffered an adverse employment action. And of course, a plaintiff no longer being disabled at the time his or her ADA claims are resolved would not absolve the defendant of liability. To the extent that the Court relies on caselaw superficially suggesting that the proper inquiry is whether a plaintiff "is" disabled, the Court treats this caselaw as referring to whether a plaintiff "was" disabled at the time that he or she suffered an adverse employment action.

[7] In other cases, the Sixth Circuit used the term "qualified," rather than "otherwise qualified," to refer to the second element. *E.g.*, *Becker v. Elmwood Loc. Sch. Dist.*, 519 F. App'x 339, 342 (6th Cir. 2013) (citing *Whitfield v. Tenn.*, 639 F.3d 253, 259 (6th Cir. 2011)). The undersigned has concluded that with respect to the elements of an indirect-evidence *prima facie* case of disability discrimination under the ADA, the applicable concept is the plaintiff being *qualified* (with or without reasonable accommodation). The undersigned need not dwell herein on the basis for that conclusion, other than to say that the term "otherwise qualified" tends to suggest inappropriately that the mere fact that someone has a disability renders him or her unqualified such that the best he or she can hope for is to be "otherwise" qualified, *i.e.*, qualified but for the fact that the disability somehow necessarily makes him or her unqualified. In the context of the second element, the concept of the plaintiff being *otherwise* qualified (with or without reasonable accommodation) is simply inapplicable, and if a court uses the term "otherwise qualified" to define the second element, the court is being inexact and could not properly mean (and typically clearly does not intend to mean) anything other than "qualified" (with or without reasonable accommodation).

*Health Servs., Inc.*, 752 F. App'x 316, 324 (6th Cir. 2018) (quoting *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008)). So if a defendant can establish the absence of a genuine issue as to the first element, *i.e.*, that the plaintiff had a disability—an issue that is obviously material and is also one of fact, as noted below—the defendant is entitled to summary judgment at step one of *McDonnell Douglas*. As for a failure-to-accommodate claim, it "necessarily involve[s] direct evidence and the [*McDonnell Douglas*] burden shifting approach is not applicable." *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020). But in any event, to establish such a claim, the "plaintiff bears the burden of establishing that he or she is disabled." *Tchankpa v. Ascena Retail Grp. Inc.*, 951 F.3d 805, 811 (6th Cir. 2020). So if a defendant can establish the absence of a genuine issue as to the existence of a disability, the defendant is entitled to summary judgment on such a claim.

As set forth below, upon having the burden shifted to her to show evidence sufficient for a reasonable jury to find that her asthma constituted a disability, Plaintiff failed to carry that burden. Because the Court finds that there is no genuine dispute as to whether Plaintiff's asthma constituted a disability within the meaning of the ADA, and because Defendant therefore is entitled to judgment as a matter of law, the Court need not reach the issue of whether Plaintiff is otherwise successful on her general disability discrimination claim or failure-to-accommodate claim (to the extent these claims are distinct as pled in the complaint) through either direct or indirect evidence.

### 1. Evaluating Asthma as a Disability Under the ADA

"[W]hether a person has a disability under the ADA is an individualized inquiry." *See Williams v. Stark Cnty. Bd. of Cnty. Com'rs*, 7 F. App'x 441, 446 (6th Cir. 2001); *see also Minnix v. City of Chillicothe,* No. 98-4285, 2000 WL 191828, at *9 (6th Cir. Feb. 10, 2000) (Krupansky J., dissenting) ("Whether a particular individual is disabled constitutes a factual question to be determined on a case-by-case basis.") (citing *Albertson's, Inc. v. Kirkingburg*, 119 S. Ct. 2162,

2169 (1999)); *see also Gruener v. Ohio Cas. Ins. Co.*, No. C-1-03-780, 2005 WL 1925748, at *1 (S.D. Ohio Aug. 11, 2005) (referring to "the factual issue of whether plaintiff is disabled"). Defendant argues that Plaintiff was not disabled at the time of the adverse employment action within the meaning of the ADA.[8] (Doc. No. 39). Specifically, Defendant argues that the record is devoid of evidence to suggest that Plaintiff's asthma substantially limited one or more of her major life activities, and that Plaintiff was not regarded as having such an impairment. (*Id.* at 14, 17).[9]

"The ADA Amendment Act of 2008 ("ADAAA"), effective January 1, 2009, altered the analysis of [whether a plaintiff has a disability]. In particular, '[t]he ADAAA substantially broadened the definition of a disability under the law, in explicit response to *Sutton v. United Air Lines Inc.,* 527 U.S. 471 [] (1999) and *Toyota Motor* [*Manufacturing*]*. v. Williams*, 534 U.S. 184 [] (2002), in which the ADA's terms defining disability had been strictly defined." *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 131 (E.D.N.Y. 2015) (quoting *Green v. PGG Props. Co., Inc.*, No. 11-cv-1989, 2013 WL 395484, at *9 (D. Conn. Jan. 31, 2013)). "While the terms of the statute were not changed, the interpretation of those terms was modified." *Id.* (internal quotation marks omitted). "Specifically, the ADAAA directs courts to construe the term ["]disability["] 'in favor of broad coverage of individuals under [the ADA], to the maximum extent permitted by the terms of [ADA].'" *Id.* (quoting 42 U.S.C. § 12102(4)(A)). And as discussed further below, after

---

[8] When analyzing disability discrimination claims under the ADA, courts determine whether a plaintiff was disabled at the time of the adverse employment action. *See Norman v. NYU Langone Health Sys.*, 492 F. Supp. 3d 154, 165 n.4 (S.D.N.Y. 2020). For the purpose of the present analysis, the parties do not dispute that Plaintiff suffered an adverse employment action when her employment was terminated, and therefore the Court treats Plaintiff's termination as an adverse employment action.

[9] Defendant argues that Plaintiff did not allege that she was disabled under the ADA on the grounds that she has a record of her asthma substantially limiting a major life activity. (Doc. No. 39 at 16 (citing 42 U.S.C. § 12102(1)(B)). Plaintiff does not respond to this argument in her response, and therefore the Court treats the point as conceded. And since Plaintiff did not make any allegations regarding such a "record," Defendant need not preliminarily show the absence of—and the Court need not determine whether there exists—any evidence of such a "record."

the 2008 amendments, "courts must inquire into whether an impairment substantially limits a major life activity 'without regard to the ameliorative effects of mitigating measures.'" *See Lloyd v. Hous. Auth. of the City of Montgomery, Ala.*, 857 F. Supp. 2d 1252, 1263 (M.D. Ala. 2012) (quoting 42 U.S.C. § 12102(4)(E)(i)).

In light of the 2008 amendments, the Sixth Circuit in *Morrissey*, explained that

> The ADA defines a disability as: "a physical or mental impairment that substantially limits one or more major life activities ... a record of such an impairment ... or being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, ..., [breathing] [. . .] and working." § 12102(2)(A). Under the 2008 amendments to the ADA, Congress made clear that the definitions of both a "disabled person" and "substantially limits" are to be construed broadly in favor of expansive coverage. *See* § 12102(4)(A), (B); *see also* 29 CFR § 1630.2(j)(1)(i). "To determine whether a disability substantially limits major life activities, the regulations direct courts to compare the person claiming a disability to 'most people in the general population.'" *Hostettler*, 895 F.3d at 854 (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). This is not a demanding standard, 29 C.F.R. § 1630 (Appendix), and in general, a plaintiff does not need to submit scientific, medical, or statistical proof to establish a substantial limitation, § 1630.2(j)(v). Additionally, "'[a]n impairment need not prevent, or significantly or severely restrict ... a major life activity' to be substantially limiting." *Id.* at 853-54 (quoting § 1630.2(j)(1)(ii)).

946 F.3d at 299.

Even in light of the 2008 amendments, "suffering from asthma, however, does not constitute a *per se* substantial limitation on the major-life-activity of breathing, and courts engage in an individualized inquiry . . . in order to determine whether a condition substantially limits a major life activity." *See Boker v. Sec'y, Dept. of Treasury*, No. 1:07-cv-446, 2009 WL 3199074, at *3 (S.D. Ohio Sept. 29, 2009). "Whether an impairment 'substantially limits' a major life activity depends upon the facts of the particular case and such case-by-case analysis is particularly important in the context of an asthma-related ADA claim." *Martinez v. Connecticut, State Libr.*,

817 F. Supp. 2d 28, 52 (D. Conn. 2011). As the court explained in *Castro v. Local 1199,* 964 F. Supp. 719 (S.D.N.Y. 1997):

> The requirement of individualized analysis is particularly appropriate in the context of disability claims relating to asthma. As of 1990, over ten million Americans have been diagnosed with asthma. *United States v. Sherman,* 53 F.3d 782, 787 (7th Cir. 1995) (citing National Institute of Health, "CTS About Asthma," Oct. 1990). The severity of asthma varies a great deal among individuals. *Id.* Symptoms may fall anywhere along the spectrum from mild to life-threatening, and the frequency of asthmatic episodes also varies greatly from person to person. *Id.* With proper treatment, however, asthmatic symptoms can almost always be controlled. *Id.* Thus, individualized inquiries are especially useful when determining whether asthma constitutes a disability under the ADA.

*Id.* at 723.[10] "Asthma has typically been found to rise to the level of a substantial limitation on the major-life-activity of breathing where the plaintiff has a long history of asthmatic attacks and endures numerous and severe restrictions on daily activities as a result of the condition." *Boker*, 2009 WL 3199074, at *3. "Where a plaintiff suffers asthma attacks only in response to particular stimuli and is able to engage in almost all normal life activities, courts have been less likely to conclude that the plaintiff is substantially limited in the major-life-activity of breathing." *See id.* (collecting cases).

With these principles in mind, the Court now turns to whether the record reflects a genuine dispute over whether Plaintiff's asthma constituted a disability under the ADA. As discussed below, the Court finds that no such genuine dispute exists because the record reflects an absence of evidence sufficient for a reasonable jury to find that Plaintiff's asthma rose to the level of a disability under the ADA.

---

[10] Although *Castro* was decided before the 2008 amendments, the Court believes that the soundness of the quoted observations was unaffected by the amendments. This belief is bolstered by reliance on this exact language by the court *Martinez*, writing three years after the 2008 amendments were enacted.

## 2. The Record Does Not Reflect that Plaintiff's Asthma Substantially Limited Her Major-Life-Activity of Breathing[11]

Defendant argues that the record does not contain evidence to support the notion that Plaintiff's asthma substantially limited her major-life-activity of "breathing." (Doc. No. 39 at 14). Plaintiff agrees that "breathing" is the major life activity on which she seeks to rely to demonstrate existence of a disability under the ADA but disputes that her breathing was substantially limited by her asthma. (Doc. No. 57 at 12–13).

The Court acknowledges that in her response, Plaintiff suggests that her major bodily function of "functions of the immune system" (which is encompassed under the ADA as a "major life activit[y]") was substantially limited by her asthma. (*Id.*). In doing so, Plaintiff relies on the notion that she is purportedly at a higher risk of contracting COVID-19 due to her asthma. (*Id.*). Consistent with this argument, Plaintiff contends that Defendant considered Plaintiff "immune compromised" during the COVID-19 pandemic. (*Id.*). However, as Defendant points out, Plaintiff did not plead in the complaint she was at an increased risk of contracting COVID-19 because of her asthma.

Courts generally will not consider factual allegations at summary judgment when they were not raised in the complaint, because doing so would violate the requirement that the defendant be given fair notice of what the plaintiff's claim is and grounds on which it rests. *See, e.g.*, *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006). Having reviewed the complaint, the Court agrees that Plaintiff failed to plead facts suggesting her asthma placed her at an increased risk of contracting COVID-19, at an increased risk of contracting a severe case of COVID-19, or

---

[11] As discussed above, the relevant question presented by the instant Motion is whether Plaintiff *was* disabled at the time of her termination. Therefore, the Court does not assess whether Plaintiff is *currently* disabled. Even so, evidence of Plaintiff's behavior after her termination is still relevant to the question of whether Plaintiff was disabled at the time of her termination, and the Court relies on such evidence where appropriate herein.

an increased risk of suffering severe complications if she contracted COVID-19. Although the complaint contains the allegation that a nurse practitioner stated that Plaintiff would benefit from working from home due to the rising risk of COVID-19, the nurse practitioner's purported statement by its terms is unrelated to Plaintiff's asthma and does not indicate that Plaintiff's asthma put her at a risk of contracting or suffering issues related to COVID-19 that exceeded the risk faced by the general population. And this allegation was not made specifically in conjunction with allegations regarding major life activities purportedly impaired by Plaintiff's asthma; rather, it was made to suggest that her request to work from home was a request for a reasonable accommodation (and thus was supportive of her failure-to-accommodate claim). Therefore, Plaintiff's assertion that her asthma put her at heightened risk of issues connected to COVID-19 (*i.e.*, risk of contraction, risk of suffering a severe case etc.) is raised for the first time at summary judgment. The Court thus declines to consider the assertion. It follows that the Court will not assess whether Plaintiff's asthma substantially limited the function of her immune system (a major life activity). The Court will assess only whether Plaintiff's asthma substantially limited her ability to breathe.

Seeking to meet its initial burden as the summary-judgment movant, Defendant argues that Plaintiff's asthma did not substantially limit her major-life-activity of breathing because Plaintiff "has been a very active person, participating in cheerleading, gymnastics, Crossfit, and domestic and international travel." (Doc. No. 39). Defendant also points out that the record reflects Plaintiff's asthma has been "well-controlled." (*Id.*). It is undisputed that Plaintiff worked out at Crossfit gyms during her employment with Defendant until late March, 2020. (Doc. No. 47 at 9). These workouts were between 100 to 200 minutes with "heavy exertion," and Plaintiff participated in these workouts "two to three times per week." (*Id.*). The parties also do not dispute that Plaintiff now participates in gymnastics two days a week. (*Id.* at 10).

As Defendant points out, counsel for Defendant asked Plaintiff in her deposition what activities her asthma generally inhibits. (Doc. No. 40-1 at 37). Plaintiff explained that she could not do a "polar plunge," "hike up a ridge," be in "cold weather, for like, long periods of time," or own a "German Shepherd" because "dog hair is a problem" when the dog is "up in [her] face" or she is "living, like, in [the dog's] dander."[12] (*Id.* at 37—38; Doc. No. 49-1 at 57). When asked whether there are other things that her asthma prevents her from doing, Plaintiff said that she could not think of any at that moment. (Doc. No. 40-1 at 38). Furthermore, in her deposition, counsel for Defendant asked Plaintiff how many times a week she uses her rescue inhaler (the use of which Plaintiff suggested indicates that she is suffering an asthma attack), and Plaintiff could not provide an estimate. (Doc. No. 48 at 105).

In responding to the facts put forth by Defendant to demonstrate that Plaintiff's asthma did not substantially limit her ability to breathe, Plaintiff contends that she has had to "employ mitigating measures to engage" in physical activities. (Doc. No. 57 at 11). Plaintiff makes this contention without a citation to the record. In additional places in her response, Plaintiff discusses mitigating measures that she claims she has taken to avoid the effects of her asthma, but these claims are likewise made without a citation to the record.[13] (*Id.* at 2, 3).

---

[12] The Court acknowledges that it may seem strange and inconsistent that Plaintiff's testimony reflects that she can complete several hours of Crossfit but cannot hike up a ridge. Nevertheless, the Court need not resolve this potential discrepancy at this time.

[13] The Court is reluctant to consider facts contained in Plaintiff's response that she has not demonstrated are based on the record. It is not the Court's job "to root through the record not unlike a pig in search of truffles to uncover any grain of evidence that might support the position of a party that chose to otherwise sit on its hands." *Penn-Daniels, LLC v. Daniels*, No. 07-1282, 2010 WL 431888, at *3 (C.D. Ill. Jan. 28, 2010) (citing *Casna v. City of Loves Park*, 574 F.3d 420, 424 (7th Cir. 2009)); *see also Emerson v. Norvartis Pharms. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (noting that "judges are not like pigs, hunting for truffles" that might be buried in the record). Nonetheless, as discussed above, even assuming that Plaintiff's assertion is supported by the record, the Court finds that Plaintiff's reliance on mitigating measures to reduce the effects of her asthma is not sufficient to support her assertion that her asthma is a disability under the ADA.

In her response, Plaintiff spends a significant amount of time arguing that Defendant's reliance on cases that pre-date the 2008 amendments to the ADA is inapt. (*Id.* at 11). The Court acknowledges that courts should proceed with caution in relying on cases regarding disability under the ADA that pre-date the 2008 amendments. However, *Gergen v. City of Kentwood*, No. 1:09-cv-127, 2010 WL 2010878 (W.D. Mich. May 18, 2010), on which Defendant relies heavily, plainly post-dates the 2008 amendments. And *Gergen* is instructive in this case.[14]

In *Gergen*, the plaintiff alleged that her employer discriminated against her based on her reactive airways disease ("RAD"). *See id.* at *1. The plaintiff alleged that when she was exposed to smoke or to individuals who have been smoking, her "eyes itch, cry, burn" and she would experience chest pains. *See id.* at *3. The court found that these symptoms resemble the symptoms of individuals suffering from asthma, and that therefore cases discussing asthma as a disability under the ADA were probative of whether the plaintiff's RAD "substantially limit[ed] her ability to breathe." *See id.* (internal quotation marks omitted).

The court went on to explain that "[m]any courts have held that sporadic episodes of breathing difficulty triggered by a specific noxious irritant, such as cigarette smoke, are not sufficient to qualify an individual as disabled within the meaning of the ADA when the individual is otherwise able to breathe without difficulty." *See id.* (collecting cases). The court also found it significant that the plaintiff had not demonstrated, "or even alleged, that her condition burdens her any appreciable portion of the day as a whole or substantially affects her life outside of work." *See id.* at *4. With these considerations in mind, the court granted summary judgment to the defendants on the claims for which existence of a disability under the ADA was a requirement. *See id.*

---

[14]Although Plaintiff asserts in a footnote that *Gergen* pre-dates the 2008 amendments, Plaintiff is plainly mistaken. *Gergen* was decided in 2010, approximately two years after the amendments. Plaintiff otherwise makes no attempt to distinguish *Gergen* despite its clear import in the facts of this case.

The plaintiff in *Gergen* shares several similarities with Plaintiff in this case. As was true with respect to the plaintiff in *Gergen*, the record here reflects that Plaintiff encounters limitations from her asthma only in very specific circumstances. As noted above, in her deposition, Plaintiff listed doing a "polar plunge," "hik[ing] up a ridge," being in "cold weather, for like, long periods of time," or owning a "German Shepherd" because "dog hair is a problem" when the dog is "up in [her] face" or she is "living, like, in [the dog's] dander" as all of the examples that she could think of that would cause her asthma to interfere with her breathing. (*Id.* at 37—38; Doc. No. 49-1 at 57). Evidently, the undisputed facts also reflect that aerosol sprays cause Plaintiff's asthma to affect her breathing. (Doc. No. 47 at 11) ("Plaintiff began coughing upon breathing in lingering aerosol spray and was required to use her inhaler."). The Court agrees with the reasoning in *Gergen*, however, that sporadic episodes of difficulty breathing due to asthma when the individual is exposed to an irritant is not sufficient to demonstrate that the asthma substantially limited the individual's breathing so as to qualify as a disability under the ADA. It logically follows that participation in non-daily activities, such as engaging in a "polar plunge" or "hik[ing] up a ridge" are also not sufficient. *See Sebest v. Campbell City Sch. Dist. Bd. Of Educ.*, No. 02-4012, 2004 WL 784991 (6th Cir. 2004) ("The record lacks any evidence indicating that, when [plaintiff] is not under stress or is not performing a strenuous activity, his breathing is significantly restricted. Therefore, [plaintiff] does not meet the first definition of disability in the ADA."); *Krinsky v. Abrams*, 2007 WL 1541369, at *12 n. 9 (E.D.N.Y. May 25, 2007) ("According to Plaintiff, his asthma and/or allergies only presented a problem under certain conditions or in certain locations (as he claimed his breathing was fine in the Courtroom). Courts have not viewed location-specific medical problems of this type as disabilities under the ADA.").

It is also significant in this case that the undisputed record reflects that Plaintiff participated in high-intensity activity during her employment with Defendant and continues to do so through gymnastics twice a week. (Doc. No. 47 at 10); *Ventura v. City of Independence*, 108 F.3d 1378 (6th Cir. 1997) (finding it significant that plaintiff admitted that his "asthma has not prevented him from playing baseball and football, performing calisthenics, walking, playing the saxophone, occasionally running, singing, and water skiing.").[15] Plaintiff's participation in these cardio-intensive activities undermines her argument that her asthma impairs a major life activity (*i.e.* breathing).

In her response, Plaintiff attempts to combat these unfavorable facts by asserting that she must use "mitigating measures" (meaning, the Court infers, the use of her inhaler) to participate in "physical activities." (Doc. No. 57 at 12). It bears mentioning what Plaintiff is really asserting here: the proposition that her asthma prevents her from participating in physical activities *without the use of an inhaler*, meaning (as explained in the accompanying footnote) that for purposes of assessing whether she has a disability, her asthma prevents her from participating in physical activities, *period*.[16] But in asserting that she cannot participate in "physical activities" without the

---

[15] Although several of the cases cited by the Court pre-date the 2008 amendments, the Court nonetheless finds them persuasive. Indeed, as demonstrated below, several cases decided after the 2008 amendments are consistent with the findings and principles announced these pre-amendment cases.

[16] As should come as no surprise, her proposition here is *not* that the availability of mitigating measures means that her asthma is not a disability. And any such proposition (which only Defendant would have had an incentive to make) would have been invalid anyway. Where it is the case that mitigating measures can lessen or eliminate the negative effects of a condition, that fact has no impact on whether the condition qualifies as a disability. This is because after the 2008 amendments, "courts must inquire into whether an impairment substantially limits a major life activity 'without regard to the ameliorative effects of mitigating measures.'" *See Lloyd*, 857 F. Supp. 2d at 1263 (quoting 42 U.S.C. § 12102(4)(E)(i)). "In effect, these provisions require courts to look at a plaintiff's impairment in a hypothetical state where it remains untreated." *Id.*

So for purposes of the instant analysis into whether Plaintiff has raised a genuine issue as to whether her asthma is a disability, to say (as Plaintiff appears to do in essence) that Plaintiff's asthma prevents her

use of an inhaler—and thus is properly viewed as being prevented by her asthma from participating in "physical activities"—Plaintiff makes no citation to the record. Plaintiff in her brief does not assert that she uses her inhaler other than when engaging in physical activities like gymnastics (Doc. No. 57 at 12)—and even her representation that she uses an inhaler while engaging in such physical activities is not supported by citation to anything in the record. But even assuming that she does use her inhaler when engaging in such activities, Plaintiff does not argue that she must rely on her inhaler to keep her asthma under control during the normal course of her day (*i.e.*, when she is not engaging in high-intensity and cardio-intensive exercise). And importantly, Defendant asserts that there is no evidence on the record to support that Plaintiff must rely on her inhaler during the regular course of a day. (Doc. No. 39 at 15, 6 (citing Doc. No. 40-1 ("Andrews Dep.") at 32–33 (explaining that, in addition to use of her inhaler during physical activities, she [Plaintiff] uses her inhaler when she experiences certain triggers such as being exposed to synthetic fog, in the cold, and when the wind is blowing in her face))).[17] The cited testimony of Plaintiff on which Defendant here relies does not explicitly state that there are no other times at which Plaintiff uses her inhaler, but it preliminarily suggests that this may be the case. If it were not the case, Plaintiff could have pointed this out by citation to something in the record, but Plaintiff does not do so.

Moreover, Plaintiff does not argue that the major-life-activity of "breathing" under the ADA includes "breathing" when a person is engaging in rigorous exercise. Wisely so, as it is common knowledge that engaging in intense exercise burdens everyone's breathing, including those who do not have asthma. It is therefore only logical, even under the more forgiving standards

---

from participating in physical activities without the use of an inhaler is to say that Plaintiff's asthma completely prevents her from participating in physical activities.

[17] The Court notes that Plaintiff does not mention the use of her inhaler in these additional instances (*i.e.*, circumstances other than when she is exercising).

of the 2008 amendments, that the major-life-activity of "breathing" does not encompass "breathing" during high-intensity exercise or other non-daily occurrences, like breathing synthetic fog, breathing in the cold, or breathing when the wind is blowing in a person's face. Therefore, even taking as true that Plaintiff cannot engage in certain physical activities without the use of her inhaler and thus is treated for instant purposes as being completely unable to engage in those kinds of activities because of her asthma, this (purported) fact is not sufficient to establish that her asthma substantially limited the major-life-activity of breathing. But even if being prevented from engaging in such activities *did* constitute a substantial limitation on the life activity of breathing, that would not help Plaintiff; because Plaintiff in fact has *not* pointed to anything in the record supporting her assertion that she cannot engage in certain physical activities without the use of her inhaler, she has failed to demonstrate a genuine issue of material fact that her asthma prevents from her engaging in these activities. Plaintiff's reliance on her use of mitigating measures therefore does not move the needle on the question of whether she had a disability when she was terminated.

The Court's finding that the record does not reflect a genuine dispute as to whether Plaintiff had a disability under the ADA at the time of her termination is consistent with the outcomes of courts that have confronted similar sets of facts. *Compare Castro*, 964 F. Supp. at 725 (holding on motion for summary judgment that asthma was not a disability under the ADA where plaintiff's asthma "restricts only her ability to go outside in extreme temperatures" or when there is "strong winds"); *Martinez*, 817 F. Supp. 2d at 54 (holding on motion for summary judgment that asthma was not a disability under the ADA where plaintiff's asthma was "exacerbated by cold temperatures"); *Gorbea v. Verizon New York, Inc.*, No. 11-cv-3758, 2014 WL 917198, at *8, *8 n.11 (E.D.N.Y. Mar. 10, 2014) (holding on motion for summary judgment that asthma was not a

disability under the ADA where plaintiff's asthma was triggered by "exposure to chemicals, high temperatures and dust") *with Hoeffner v. County of Orange*, 17-cv-9344, 2020 WL 1165851, at *6 (S.D.N.Y. Mar. 10, 2020) (finding on motion for summary judgment that plaintiff's asthma was a disability under the ADA when plaintiff had nineteen asthma attacks in the period of three months); *Peeples v. Clinical Support Options, Inc.*, 487 F. Supp. 3d 56, 63 (D. Mass. 2020) (holding on motion for a preliminary injunction that plaintiff's asthma was a disability under the ADA where plaintiff had "comparatively frequent asthma attacks"). The Court is therefore satisfied that the record does not reflect a genuine dispute as to whether Plaintiff's asthma was a disability under the ADA at the time of her termination.[18] Defendant is thus entitled to summary judgment on Plaintiff's general disability discrimination claim.

As noted above, the complaint contains a single count for "discrimination in violation of the ADA and failure to provide a reasonable accommodation. . . ." (Doc. No. 1 at 8). Typically, courts treat general disability discrimination and failure to accommodate as two separate claims under the ADA. Thus far, the Court's analysis has focused on whether Plaintiff's claim of disability

---

[18] On the issue of whether Plaintiff was *regarded as having* an impairment that substantially limited a major life activity, Defendant has pointed to evidence on the record demonstrating that Ms. Taylor was the sole person responsible for Plaintiff's termination, and that at the time of the termination, Ms. Taylor did not know that Plaintiff had asthma. (Doc. No. 39 at 4 (citing Doc. No. 47 at 5, 7)). Therefore, according to Defendant, the record does not support that it regarded Plaintiff as having an impairment essentially limiting a major life activity caused by her asthma. This evidence is sufficient to shift the summary judgment burden to Plaintiff to show that there is a genuine dispute that she was regarded as having an impairment that substantially limited the major-life-activity of breathing or being immunocompromised (*i.e.*, the two major life activities that Plaintiff relies on in support of her claims). The only reference to this issue made by Plaintiff in her response is that Defendant regarded Plaintiff as having a disability because Defendant purportedly designated her as *immunocompromised* in light of the COVID-19 pandemic. (Doc. No. 57 at 12). In other words, Plaintiff does not address whether Defendant regarded her as having an impairment substantially limiting her major-life-activity of "breathing." Plaintiff's reference to being immunocompromised, however, is part and parcel of Plaintiff's argument that her asthma put her at greater risk of issues related to COVID-19. As explained above, the Court declines to consider whether Plaintiff's asthma left her at greater risk of experiencing issues related to COVID-19 because this allegation was not pled in the complaint. It follows that the Court need not address Plaintiff's assertion that Defendant regarded Plaintiff as disabled because it allegedly designated (*i.e.*, regarded) her as immunocompromised in light of the pandemic.

discrimination can survive summary judgment. To the extent that the complaint pleads a separate claim for failure to accommodate (which the Court is suspect of given that the complaint contains only a single count), the Court's finding that there is no genuine dispute that Plaintiff's asthma was not a disability under the ADA at the time of her termination forecloses any claim of failure to accommodate. And as noted above, to establish a claim for failure to accommodate under the ADA, "plaintiff bears the burden of establishing that he or she is disabled." *Tchankpa*, 951 F.3d at 811. Because the Court has found that there is no genuine dispute that Plaintiff's asthma was not a disability under the ADA at the time of her termination, Defendant is also entitled to summary judgment on Plaintiff's failure-to-accommodate claim (again, assuming that this claim is properly pled in the complaint).

<u>CONCLUSION</u>

For the reasons stated herein, Defendant's motion for summary judgment is GRANTED. (Doc. No. 38). This is the final order in the case. All relief being denied, the Clerk of the Court is ORDERED to enter final judgment under Federal Rule of Civil Procedure 58.

IT IS SO ORDERED.

*Eli Richardson*

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE